596 So.2d 836 (1992)
730 BIENVILLE PARTNERS LTD.
v.
FIRST NATIONAL BANK OF COMMERCE, Lee Schlesinger, and Westminster Parking of Louisiana d/b/a 721 Iberville Street Garage.
No. 91-CA-1518.
Court of Appeal of Louisiana, Fourth Circuit.
March 17, 1992.
Writ Denied June 19, 1992.
*837 Douglas S. Draper, Constant G. Marquer, III, Friend, Wilson & Draper, New Orleans, for plaintiffs/appellants.
Rader Jackson, Shushan, Meyer, Jackson & McPherson, New Orleans, for defendants/appellees.
Before BARRY and CIACCIO, JJ., and GULOTTA, J., Pro Tem.
BARRY, Judge.
Plaintiffs-appellants, 730 Bienville Partners, Ltd. and Westinghouse Development & Management Corporation, claim a servitude of passage by destination. The trial court dismissed their petition for a preliminary injunction.[1]

FACTS
This matter involves three contiguous tracts:

On October 22, 1980, Royal Bienville Investors, a partnership in commendam, purchased the Saint Louis Hotel, including Parcel K, and the Solari Garage.[2] On May 27, 1983 Marie Antoinette Investors acquired a 50 year lease and an option to *838 purchase Parcel K from Royal Bienville Investors. On March 14, 1984, by Act of Exchange, Royal Bienville Investors transferred the Hotel, Parcel K and the Garage to Royal St. Charles, Ltd. in exchange for a 74% limited partnership interest in Royal St. Charles, Ltd. An Act of Correction dated March 31, 1984 recognized that Royal St. Charles, Ltd. assumed five separate mortgages in the transfer.
On December 15, 1986 Royal St. Charles, Ltd. and Royal Bienville Investors transferred the Garage and Parcel K, subject to the Marie Antoinette lease, to Security Homestead pursuant to bankruptcy court orders. Royal St. Charles, Ltd. retained ownership of the Hotel. That was the first severance of ownership of the three contiguous parcels.
On January 27, 1988 Security Homestead sold the Garage and Parcel K to Lee H. Schlesinger subject to the leasehold interest in Parcel K held by Marie Antoinette Investors.
On December 27, 1990 Royal St. Charles, Ltd. sold its interest in the Hotel and its leasehold in Parcel K to Westinghouse Development & Management Corp. who leased, with an option to purchase, the Hotel and Parcel K to appellants, 730 Bienville Partners, Ltd., a partnership in commendam and managing general partner of Royal St. Charles, Ltd.
Lee H. Schlesinger granted a mortgage on the Garage and Parcel K in favor of First National Bank of Commerce (First NBC) who later instituted executory process proceedings against the mortgaged property and was appointed its keeper. Westminster Parking of Louisiana, d/b/a Iberville Street Garage, operates the Garage.
On December 15, 1990 the Hotel terminated its parking agreement with the Garage and moved its guest and employee cars to a garage located across the street from the Garage. On December 21, 1990 Westminster Parking informed appellants of their intent to close a doorway between Parcel K and the Garage thereby denying passage from the Hotel through Parcel K to the Garage and Iberville Street. On January 4, 1991 First NBC notified Westinghouse Development & Management Corp. that bars would be placed across the doorway. On January 9, 1991, Westminster Parking, at the direction of First NBC and Lee H. Schlesinger, began installation of a metal blockade at the doorway.
On January 11, 1991 appellants filed a petition to enjoin the closure of the doorway. Appellants maintain that an apparent servitude of passage via the doorway exists in favor of the Hotel and Parcel K through the Garage to and from Iberville Street. Relying on La.C.C. art. 741, appellants argued that the servitude arose by "destination of the owner" in 1986 when title to the tracts was severed upon the transfer of the Garage and Parcel K from Royal St. Charles, Ltd. to Security Homestead Association.
In a letter dated January 15, 1991, the New Orleans Fire Department informed the Garage that the accordian metal gate violated the Fire Prevention Code and ordered the Garage to "[r]emove [the] gate from the exit door which serves as a dedicated exit from the rear of the St. Louis Hotel."
The trial court found that Parcel K's doorway "has been used over the [past] several years as a means of ingress and egress between the garage and the hotel pursuant to the lease of spaces in the garage to the hotel. These parking spaces were used for the hotel's employees and guests." The trial court reasoned that the designation "of a doorway as a fire exit" or "the use of property pursuant to a lease" does not create a servitude.
Appellants argue that the trial court incorrectly found that appellants' use of passage from Parcel K to the Garage was conditioned upon the Hotel "leasing" parking space rather than pursuant to a servitude.

LAW
A plaintiff cannot obtain a preliminary injunction without making a prima facie showing that it will prevail on the merits. Ormond Country Club v. Dorvin Developments, Inc., 498 So.2d 144 (La.App. *839 5th Cir.1986), writ denied 500 So.2d 423 (La.1987).
Appellants introduced documents, exhibits and testimony in their attempt to establish the servitude of passage. See La. C.C.P. art. 3609 (which permits proof as in an ordinary case). During oral argument before this Court, appellants stated that the record is complete as to whether a servitude has been established.
A servitude of passage allows persons associated with the dominant estate to pass through the servient estate. La.C.C. art. 705. A servitude of passage may be an apparent servitude. Apparent servitudes are evidenced "by exterior signs, works, or constructions." La.C.C. art. 707. (emphasis added). An apparent servitude may arise by destination of the owner. La. C.C. art. 740. "Destination of the owner is a relationship established between two estates owned by the same owner that would be a predial servitude if the estates belong to different owners. When the two estates cease to belong to the same owner, unless there is express provision to the contrary, an apparent servitude comes into existence of right...." La.C.C. art. 741. A servitude that is created by destination of the owner is based "on the idea that when the owner of two estates transfers one of them to another person, there is a tacit agreement between the parties that the existing relationship between the estates will be maintained." A.N. Yiannopoulos, Creation of Servitudes By Prescription and Destination of the Owner, 43 La.L.Rev. 56, 74 (1982) (emphasis added). Thus, the common owner must intend to create an apparent servitude and such intent must be evidenced by exterior signs which are consistent with the nature and extent of the servitude claimed. Id. Any doubt concerning the "existence, extent, or manner of exercise of a predial servitude shall be resolved in favor of the servient estate." La.C.C. art. 730.
The Hotel, Parcel K and Garage ceased common ownership in 1986 when Royal St. Charles Investors transferred Parcel K and the Garage to Security Homestead. Security Homestead sold the Garage and Parcel K to Lee Schlesinger in 1988 as per a survey dated May 9, 1983 and recertified on December 30, 1987. The survey shows the door and "Entry to Hotel" is written in the area designated Parcel K. The survey does not evidence an intent to establish a servitude of passage from Iberville Street through the Garage to the Hotel, as suggested by plaintiff. The survey merely shows that the Hotel could be entered from the Garage.
Photos in evidence show a small illuminated sign above the door which reads "The Saint Louis Hotel." A sign on the Garage's interior wall indicates that the door is an entrance to the Louis XVI Restaurant which is in the Hotel. Signs on Parcel K's side of the doorway state "To Parking" and "Exit." All signs are well inside the Garage near the door on the Garage side or in Parcel K. Iberville Street is visible from Parcel K and the door can be seen from Iberville Street. Decorative light fixtures adorn each side of a short hallway in Parcel K which leads to the door. The Garage wall near the doorway is painted to match the walls surrounding the door. Importantly, there is no exterior sign on the Garage which directs foot or vehicular traffic from Iberville St. through the Garage to the passage in Parcel K. See La.C.C. art. 707.
Mark C. Smith, President of the corporate general partner of Royal Bienville Investors, President of the corporate general partner of Royal St. Charles, Ltd., and an officer of the general partner of 730 Bienville Partners, Ltd., testified that prior to the severance of title the doorway was used by "patrons and purveyors and deliverers" and that eighty percent of the people using the doorway parked their cars in the Garage. According to Mr. Smith, patrons and deliverers who did not park in the Garage sometimes walked through the Garage to the Hotel.
When ownership of the Garage and Parcel K was severed from the Hotel, the Hotel made "financial arrangements" to park cars owned by Hotel guests, Hotel employees and restaurant patrons who used the Garage at a reduced rate. Mr. *840 Smith said that ninety percent of the Hotel guest cars were driven by Hotel employees from Bienville Street to the Garage. The Hotel terminated that arrangement on December 15, 1990 when the Hotel began use of the Downtown Parking Garage, a competitor of the Garage. Mr. Smith claimed that Hotel hikers walked through the Garage to retrieve cars from Downtown Parking on Iberville Street across from the Garage.
Alfred Aning, manager of the Garage from May 1, 1990 to April 30, 1991, testified that the door was used by "employees of the hotel and ... the hikers who were coming to retrieve cars." Mr. Aning once observed a truck back into the Garage to pick up the Hotel's garbage, but he told the driver to cease that activity. This was the only "through" traffic he had witnessed. Mr. Schlesinger, the Garage owner, testified that only Hotel employees used the door.
Appellants failed to prove that the former common owners of the property, Royal Bienville Investors and Royal Saint Charles, Ltd., intended to establish a servitude of passage through the Garage to and from Iberville Street. Historical use of the door and interior signs and works show that pedestrian traffic from the Garage via the door was conditioned on the Hotel parking cars in the Garage. There is no evidence to support the appellants' contention that the Garage was intended as a path for persons to enter or leave the Hotel via Iberville Street.
Appellants did not make a prima facie case that they could prevail on the merits. Thus, the trial court was not manifestly erroneous by denying the preliminary injunction.
Our conclusion has no bearing on the apparent fact that the door between the Garage and Parcel K is a fire exit for the Hotel. During the preliminary injunction proceeding, the parties stipulated that "the door is a designated fire door." Any restriction by appellee on use of the door must be consistent with the stipulation and comply with the Fire Prevention Code.
Use of the door as a designated fire exit does not, as the trial court correctly concluded, create a servitude of general passage through the Garage to Iberville Street.
Denial of the preliminary injunction is affirmed.
AFFIRMED.
NOTES
[1] Although appellants filed a pleading captioned "Petition for Temporary Restraining Order, Preliminary Injunction and Thereafter a Permanent Injunction," the petition does not pray for a permanent injunction.
[2] Property unrelated to this lawsuit will not be mentioned.