CIACCIO, J.
 
 *
 

 | ,We granted certiorari in this matter to determine whether the court of appeal erred in affirming the district court’s grant of summary judgment in favor of the defendants, Cynthia Nelson Schupp and Roland Lawrence Cutrer, Jr. Specifically, we must consider whether the existence of a concrete driveway, which extends from an enclosed parcel of land through an adjacent property to the nearest public road and which existed when the common owner of the properties sold one of the parcels, is an exterior sign evidencing the common owner’s intent to create a predial servitude. For the reasons discussed herein, we conclude the defendants failed to carry their burden of proof that there is no genuine issue of material fact as to whether the existence of the driveway evidences the common owner’s intent to create a •servitude by destination of the owner. Therefore, the summary judgment rendered in favor of the defendants is vacated and the case is remanded for further proceedings.
 

 | .FACTS AND PROCEDURAL HISTORY
 

 Located in Orleans Parish, “Lot F” is bounded by Exposition Boulevard and Audubon Park to the West, Patton Street to the North, and other residential properties to the South and East. In 1978, the common owner, Richard Katz, subdivided the land into two lots: 543 Exposition Boulevard, which is located in the northernmost section of the parcel directly adjacent to Patton Street, and 541 Exposition Street. When 541 Exposition Boulevard was sold separately, it had no direct access to a usable public street other than through 543 Exposition Boulevard to Patton Street, the nearest public road. Although 541 Exposition Boulevard has frontage on Exposition Boulevard, the boulevard is not a public road. Rather, it is a walkway adjacent to Audubon Park and is not designated for vehicular passage. Therefore, 541 Exposition Boulevard is an enclosed estate, as its only access to Patton Street is through 543 Exposition Boulevard. At the time the common owner sold 541 Exposition Boulevard, he left in place a paved driveway that extended from a garage located on 541 Exposition Boulevard through 543 Exposition Boulevard to Patton Street.
 

 In 1978, the common owner appears to have sold 541 Exposition Boulevard to First Homestead and Savings Association, which subsequently sold the property to Michael Botnick.
 
 [1]
 
 The plaintiff in this matter, Roger Phipps, and his wife, Evant-hia Phipps, purchased the property from Mr. Botnick in 1982, and the Phipps have resided at that address for over 24 years. Mr. Phipps alleges throughout that time
 
 *596
 
 he has possessed, exercised, and used the driveway as a right of passage from his property through 543 Exposition Boulevard to Patton Street. Mr. Phipps concedes |3he has not used the driveway for vehicular passage since 2003, when the enclosure of a carport in the backyard of 543 Exposition Boulevard blocked the driveway and prevented vehicular access to his garage. However, Mr. Phipps has continued to use the unobstructed portion of the driveway for walking access to and from Patton Street.
 

 On June 13, 2006, defendants Cynthia Schupp and Roland Lawrence Cutrer, Jr., who reside at 543 Exposition Boulevard, began erecting a fence across the alleged pedestrian right of passage, thereby completely preventing Mr. Phipps from accessing Patton Street. In response, Mr. Phipps filed a possessory action in which he sought to have his alleged right of passage recognized and to have the carport enclosure and fence that block the alleged right of passage removed.
 

 The defendants filed an Exception of No Cause of Action, which was denied by the district court. Subsequently, the defendants filed a Motion for Summary Judgment. Mr. Phipps opposed the motion, contending the existence of the driveway at the time the common owner sold one of the parcels evidences the creation of a servitude by destination of the owner in accordance with La. C.C. art. 741.
 
 [2]
 
 The district court granted the defendants’ Motion for Summary Judgment, finding Mr. Phipps was unable to demonstrate “intent evidenced by exterior signs,” as required [4by La. C.C. art. 707,
 
 [3]
 
 because the mere existence and use of the driveway does not constitute a predial servitude.
 

 The court of appeal affirmed the district court’s grant of the defendants’ Motion for Summary Judgment, agreeing that under
 
 730 Bienville Partners Ltd. v. First Nat. Bank of Commerce,
 
 596 So.2d 836 (La.App. 4 Cir.1992),
 
 writ denied,
 
 600 So.2d 642 (La.1992), proof of the common owner’s intent to create a servitude goes beyond the existence of the contested pathway itself and must be proven by other exterior signs. Finding Mr. Phipps was unable to prove the existence of exterior signs evidencing a predial servitude, the court of appeal concluded he failed to carry the requisite burden of proof.
 

 Mr. Phipps now appeals to this court, asserting the defendants would require a predial servitude be evidenced by title even though La. C.C. art. 741 provides a predial servitude may be created by destination of the original owner. He also contends the lower courts ignored the material facts evidencing the common owner’s intent to create a servitude, including (1) the fact that the common owner left the visible concrete driveway in place when
 
 *597
 
 the two estates ceased to belong to the same owner; (2) the fact that the common owner did not provide an express provision stating an apparent servitude was not created, as required by La. C.C. art. 741; and (3) the fact that a gate attached to 543 Exposition Boulevard, which could block the right of passage on the driveway, was locked and unlocked by a key delivered to Mr. 15Phipps when he purchased 541 Exposition Boulevard. Additionally, Mr. Phipps avers intent is a subjective fact, that exterior signs may serve as circumstantial evidence of the common owner’s intent to create a servitude, and that facts regarding intent should be construed in the light most favorable to the non-movant on summary judgment. Thus, Mr. Phipps maintains the lower courts erred in granting the defendants’ Motion for Summary Judgment.
 

 DISCUSSION
 

 A motion for summary judgment shall be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B);
 
 Jones v. Estate of Santiago,
 
 03-1424, p. 4 (La.4/14/04), 870 So.2d 1002, 1005. The summary judgment procedure is favored in Louisiana and is designed to secure the just, speedy, and inexpensive determination of actions. La. C.C.P. art. 966(A)(2);
 
 Jones,
 
 870 So.2d at 1005. Appellate courts review summary judgment
 
 de novo,
 
 using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate, and in the light most favorable to the non-movant.
 
 Yokum v. 615 Bourbon Street, L.L. C.,
 
 07-1785, p. 25 (La.2/26/08), 977 So.2d 859, 876. Thus, appellate courts must ask the same questions the trial court does in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law.
 
 Hood v. Cotter,
 
 08-0215, p. 9 (La.12/2/08), 5 So.3d 819, 824.
 

 The initial burden of proof remains with the mover to show that no genuine issue of material fact exists. La. C.C.P. art. 966(C)(2);
 
 Jones,
 
 870 So.2d at 1006. If the mover has made a prima facie showing that the motion should be granted, the hjburden shifts to the non-moving party to present evidence demonstrating that a material factual issue remains.
 
 Id.
 
 The failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. La. C.C.P. art. 966(C)(2);
 
 Jones,
 
 870 So.2d at 1006. Summary judgment usually is not appropriate for claims based on subjective facts such as motive, intent, good faith, knowledge, and malice.
 
 Id.
 
 However, this court has acknowledged “summary judgment may be granted on subjective intent issues when no issue of material fact exists concerning the pertinent intent.”
 
 Smith v. Our Lady of the Lake Hospital, Inc.,
 
 93-2512, p. 28 (La.7/5/94), 639 So.2d 730, 751.
 

 The defendants note that, under La. C.C. art. 730, “doubt as to the existence, extent, or manner of exercise of a predial servitude shall be resolved in favor of the servient estate.”
 
 Palomeque v. Prudhomme,
 
 1995-0725, p. 7 (La.11/27/95), 664 So.2d 88, 93. They contend since it is questionable whether the common owner intended to establish a predial servitude by leaving the driveway in place, this issue should be resolved in their favor. However, the defendants in this instance utilize the summary judgment procedure to seek relief. Therefore, in order to determine if there is doubt as to whether the driveway was intended to serve the enclosed estate,
 
 *598
 
 we must view the record and all reasonable inferences that may be drawn from it in the light most favorable to the non-movant, Mr. Phipps.
 
 See, Hines v. Garrett,
 
 2004-0806, p. 1 (La.6/25/04), 876 So.2d 764, 765. For the reasons discussed below, considering this matter in the light most favorable to the non-movant, we find issues of material fact exist concerning the intent of the common owner to create a predial servitude. Therefore, the district court’s awarding of summary judgment was not appropriate.
 

 Although the lower courts and the parties failed to refer to La. C.C. art. 689, |7we must address this article, as it has bearing on the outcome of the case, and thus, should have been considered by the lower courts. La. C.C. art. 689 provides, “The owner of an estate that has no access to a public road may claim a right of passage over neighboring property to the nearest public road. He is bound to indemnify his neighbor for the damage he may occasion.” A “public road” is any place that is open to vehicular traffic by members of the general public, even if the public is unlikely to use the road except to go to a particular place, and maintained by the public.
 
 Bardfield v. New Orleans P.B. Railroad,
 
 371 So.2d 783, 786 (La.1979).
 

 Passage from an enclosed estate to a public road is necessary in order for city services, such as a fire department, garbage collection, and sewage services, to access the property. Furthermore, passage to the public road keeps the enclosed estate in commerce because, without such access, it is unlikely any prospective purchaser would want to buy the property from the owner of the enclosed estate.
 
 See, Vermilion Parish School Bd. v. Broussard,
 
 263 La. 1104, 270 So.2d 523, 525 (1972) (holding a servitude which the owner of an estate surrounded by other lands may impose on neighboring property to gain access to a public road is provided not only for the benefit of the landowner by permitting full utility of his land, but also to benefit the public by keeping valuable property in commerce.) Applying La. C.C. art. 689 to the instant matter, we find genuine issues of material fact exist as to whether Mr. Phipps, as the owner of an estate that has no access to a public road, has the right to claim a right of passage over neighboring property (543 Exposition Boulevard) via the driveway to the nearest public road (Patton Street).
 

 Next, we address Mr. Phipps’ argument that a predial servitude came into existence when the common owner sold one of the parcels and left the driveway in place. Predial servitudes are either apparent or nonapparent. La. C.C. art. 707. [^Apparent servitudes are those that are perceivable by exterior signs, works, or constructions; such as a roadway, a window in a common wall, or an aqueduct.
 
 Id.; Palomeque,
 
 664 So.2d at 91. Nonap-parent servitudes are those that have no exterior sign of their existence; such as the prohibition of building an estate or of building above a particular height. La. C.C. art. 707;
 
 Palomeque,
 
 664 So.2d at 91. Apparent servitudes may be acquired by title, by destination of the owner, or by acquisitive prescription. La. C.C. art. 740;
 
 Palomeque,
 
 664 So.2d at 91. Destination of the owner is a relationship established between two estates owned by the same owner that would be a predial servitude if the estates belonged to different owners. La. C.C. art. 741;
 
 730 Bienville Partners Ltd.,
 
 596 So.2d at 839. When the two estates cease to belong to the same owner, unless there is express provision to the contrary, an apparent servitude comes into existence of right and a nonapparent servitude comes into existence if the owner has previously filed for registry in the conveyance records of the parish in which the
 
 *599
 
 immovable is located a formal declaration establishing the destination. La. C.C. art. 741;
 
 730 Bienville Partners Ltd.,
 
 596 So.2d at 839.
 

 In the matter before us, Mr. Phipps solely contends an apparent servitude came into existence by destination of the owner in accordance with La. C.G. art. 741. He asserts the lower courts erred in determining there is no genuine issue of material fact as to whether the existence of the driveway, which was left in place when the common owner sold 541 Exposition Boulevard, is an exterior sign evidencing the common owner’s intent to create a predial servitude. We agree.
 

 In granting the defendants’ Motion for Summary Judgment, the district court relied upon the court of appeal’s decision in
 
 730 Bienville Partners Ltd. v. First Nat. Bank of Commerce,
 
 in which the court stated:
 

 ... the common owner must intend to create an apparent servitude and such intent must be evidenced by exterior signs | ;|Which are consistent with the nature and extent of the servitude claimed. Any doubt concerning the “existence, extent, or manner of exercise of a predial servitude shall be resolved in favor of the servient estate.” 596 So.2d 836, 839 (La.App. 4th Cir.1992),
 
 writ denied,
 
 600 So.2d 642 (La.1992).
 
 [4]
 

 In
 
 730 Bienville Partners Ltd.,
 
 Lot K was located in between and adjacent to the St. Louis Hotel, which faced Bienville Street, and a parking garage, which faced Iberville Street. Although all three properties were at one time owned by the same parties, the hotel and Lot K eventually were owned separately from the garage. The St. Louis Hotel and the owners of the parking garage entered into an agreement whereby the hotel patrons would be allowed to park their cars in the garage. Eventually, the hotel terminated its contract with the parking garage and formed a parking agreement with another garage located on Iberville Street. However, the hotel patrons continued driving through Lot K and the adjacent parking garage until the owners of the garage placed a metal blockade between Lot K and the garage. As a result, the New Orleans Fire Department ordered the removal of the blockade because it violated the fire code.
 
 [5]
 

 The hotel filed a petition to enjoin the owners of the garage from implementing the blockage, asserting the existence of an apparent servitude by destination of the owner in favor of the hotel and Lot K through the parking garage. The district court determined a servitude did not exist, and therefore, denied the request for an | minjunction. The court stated:
 

 [Parcel K’s doorway] has been used over the [past] several years as a means of ingress and egress between the garage and the hotel pursuant to the lease of spaces in the garage to the hotel. These
 
 *600
 
 parking spaces were used for the hotel’s employees and guests.
 
 Id.
 
 at 838.
 

 Furthermore, the district court found the “designation of a doorway as a fire exit” or “the use of property pursuant to a lease” does not create a servitude.
 
 Id.
 

 The court of appeal affirmed the district court, holding:
 

 [a]ppellants failed to prove that the former common owners of the property ... intended to establish a servitude of passage through the Garage to and from Iberville Street. Historical use of the door and interior signs and works show that pedestrian traffic from the Garage via the door was conditioned on the Hotel parking cars in the Garage. There is no evidence to support the appellants’ contention that the Garage was intended as a path for persons to enter or leave the Hotel via Iberville Street.
 
 Id.
 
 at 840.
 

 The instant matter is distinguishable from
 
 730 Bienville Partners Ltd.
 
 because in that case, there were no exterior signs indicating the existence of an apparent servitude, such as signs directing foot or vehicular traffic from Iberville Street through the parking garage to the passage in Lot K. Rather, all signs evidencing a possible right of passage were located within the interior of the garage.
 
 [6]
 
 According to La. C.C. art. 707, an apparent servitude, such as a servitude created by destination of the owner, must be evidenced by the presence of
 
 exterior
 
 signs, such as a roadway, in order for an apparent servitude to exist. In the case before us, it is conceivable that the paved driveway is a perceivable exterior sign — a “roadway” — ■ contemplated by La. InC.C. art. 707. After all, the driveway visibly extends from Mr. Phipps’ garage through the defendants’ property to the nearest public road. Therefore, issues of material fact remain as to whether the driveway’s location suggests it was intended to serve the enclosed estate as a right of passage to the nearest public road.
 

 In addition, the court of appeal in
 
 730 Bienville Partners Ltd.
 
 did not discuss any argument set forth by the plaintiffs that the hotel had no access to a public road other than through the alleged right of passage. In fact, the hotel has frontage on Bienville Street, a public road. Therefore, considering the facts as set forth by the court of appeal in
 
 730 Bienville Partners Ltd.,
 
 that matter was not governed by La. C.C. art. 689, which allows the owner of an estate that has no access to a public road to claim a right of passage over neighboring property to the nearest public road. Although the court of appeal in
 
 730 Bien-ville Partners Ltd.
 
 noted the plaintiffs asserted an apparent servitude of passage existed in favor of the hotel and Lot K through the parking garage, the court did not state the plaintiffs averred the hotel’s only access to the nearest public road was through the parking garage. In contrast, in the matter before us, Mr. Phipps argues his only access to the nearest public road is through 543 Exposition Boulevard. The fact that such a right of passage is required in order for Mr. Phipps to have
 
 *601
 
 access to the nearest public street brings the instant matter within the ambit of La. C.C. art. 689. Moreover, the lower courts in
 
 730 Bienville Partners Ltd.
 
 noted use of the passage from the parking garage to Lot K was conditioned on the hotel parking cars in the garage pursuant to the parking lease. Such is not the case in the instant matter.
 

 Additionally, the defendants maintain because Mr. Phipps could not refer to any “writing, title, survey, or other exteri- or sign that evidenced the common owner’s intent to create an apparent servitude,” the common owner did not intend to create a |12servitude by destination. The defendants concede that an express provision is not required to create a servitude by destination of the owner, but they contend had it existed, it would have shown the common owner intended for the driveway to serve 541 Exposition Boulevard. We find the defendants’ argument is without merit, as La. C.C. art. 741 does not require an express provision in order for a servitude by destination of the owner to exist.
 

 Moreover, the common owner did not provide an express provision that a servitude by destination was not created when he sold 541 Exposition Boulevard. Under La. C.C. art. 741, the common owner must disavow the existence of a predial servitude when both estates cease to belong to him, or an apparent servitude comes into existence as of right. The defendants maintain the common owner expressly disavowed any encumbrance of the 543 Exposition Boulevard property in the 1983 Act of Sale.
 
 [7]
 
 However, the common owner did not place an express provision denying the apparent servitude in the property descriptions of either estate when he subdivided the property in 1978 and sold one of the parcels. Thus, it is plausible that a servitude by destination of the owner came into existence as of right in 1978 at the moment the common owner alienated one of the properties. As such, genuine issues of material fact remain regarding this issue.
 

 In addition, Mr. Phipps asserts a key provided to him by the seller (Mr. Botnick) that locks and unlocks a gate that crosses the concrete driveway is additional evidence of the common owner’s intent to create a servitude. The key also unlocks and locks the doors to 541 Exposition Boulevard (including a front door, a side-rear door, and a gate that fronted Exposition Boulevard) and garage doors. If the common | |Sowner provided the key to Mr. Bot-nick, who then gave it to the Phipps, then it would appear the common owner did intend for the driveway running through 543 Exposition Boulevard to serve 541 Exposition Boulevard. Thus, the existence of the key and the nature of its alleged use also raise questions of material fact as to the common owner’s intent to create a servitude by destination of the owner.
 

 Additionally, in order to have received permission from the New Orleans City Planning Commission to subdivide the land, and thus, to sell the property in separate parcels, the common owner must have intended to provide the enclosed estate access to the nearest public road. According to the public records of the city of New Orleans, a 1950 subdivision regulation
 
 [8]
 
 required all parcels of land in a
 
 *602
 
 subdivision to have frontage on a public street. Subsequent regulations in 1999
 
 [9]
 
 augmented' this requirement. We must assume that because the Planning Commission approved the common owner’s request to subdivide his land, he must have complied with the 1950 subdivision regulation, thereby intending both parcels to have access to the nearest 114public road (Patton Street).
 
 [10]
 

 Finally, we address the defendants’ contention that Mr. Phipps’ posses-sory action has prescribed because he did not bring this action within one year from the alleged disturbance of possession, namely, the enclosure of the carport in 2003, which obstructed vehicular passage along the driveway. To maintain a posses-sory action the possessor must allege and prove: (1) he had possession of the immovable property or real right therein at the time the disturbance occurred; (2) he and his ancestors in title had such possession quietly and without interruption for more than a year immediately prior to the disturbance, unless evicted by force or fraud; (3) the disturbance was one in fact or in law, as defined in Article 3659; and (4) the possessory action was instituted within a year of the disturbance. La. C.C.P. art. 3658;
 
 Chaney v. State Mineral Bd.,
 
 444 So.2d 105, 107(La.1983). Disturbances of possession which give rise to the possesso-ry action are of two kinds: disturbance in fact and disturbance in law. La. C.C.P. art. 3659;
 
 Mary v. H-Tide Realty, Inc.,
 
 202 So.2d 457, 459 (La.App. 4 Cir.1967). A disturbance in fact is an eviction, or any other physical act which prevents the possessor of immovable property or of a real right therein from enjoying his possession quietly, or which throws any obstacle in the way of that enjoyment. La. C.C.P. art. 3659;
 
 Mary,
 
 202 So.2d at 459. A disturbance in law is the execution, recor-dation, registry, or continuing existence of record of any instrument which asserts or implies a right of ownership or to the possession of immovable property or of a real right therein, or any claim or pretension of ownership or right to the possession thereof except in an action or proceeding, adversely to the possessor of such property or right. La. C.C.P. art. 3659;
 
 Mary,
 
 202 So.2d at 459.
 

 In the matter before us, the defendants assert the enclosure of the carport in 2003 was a disturbance in fact that triggered the one-year prescriptive period during which Mr. Phipps was required to file suit in order to maintain a possessory action. The defendants argue if a predial servitude existed in favor of the enclosed estate, its primary purpose was to serve as a
 
 *603
 
 vehicular passage between 541 Exposition Boulevard and Patton Street. Because Mr. Phipps did not bring this action until 2006 (when passage by foot was obstructed by erection of the fence), the defendants maintain Mr. Phipps’ right to bring a pos-sessory action has prescribed. We disagree.
 

 A partial use of the servitude constitutes use of the whole. La. C.C. art. 759;
 
 See, Dupont v. Hebert,
 
 2006-2334 (La.App. 1 Cir. 2/20/08), 984 So.2d 800,
 
 writ denied,
 
 2008-0640 (La.5/9/08), 980 So.2d 695 (holding use of a portion of a servitude of passage by the dominant property owner was sufficient to interrupt the prescription of nonuse, although it was possible that no one used the unpaved portion of the servitude to access the rear of the dominant property owner’s property since the ser-vient property owner moved there). A predial servitude is indivisible. La. C.C. art. 652;
 
 Cathcart v. Magruder,
 
 2006-0986 (La.App. 1 Cir. 5/4/07), 960 So.2d 1032, 1039. An estate cannot have upon another estate part of a right of way, or of view, or of any other servitude, nor can an estate be charged with a part of a servitude. La. C.C. art. 652;
 
 Cathcart,
 
 960 So.2d at 1039.
 

 In light of La. C.C. art. 759, we find Mr. Phipps’ partial use of the servitude as a walkway, after vehicular passage was obstructed in 2003, constitutes use of the entire servitude. Therefore, Mr. Phipps’ possession of the servitude was not disturbed until 2006, when he could no longer use the driveway in any capacity. Furthermore, in accordance with La. C.C. art. 652, the servitude is indivisible, and thus, its use for 11 (¡vehicular purposes cannot be considered separate from its use as a passage by foot. Because Mr. Phipps filed suit within one year of when the entire servitude was obstructed, his possessory action has not prescribed.
 

 CONCLUSION
 

 Genuine issues of material fact exist concerning whether an apparent servitude was established by destination of the common owner. For the reasons assigned, the summary judgment rendered in favor of Cynthia Nelson Schupp and Roland Lawrence Cutrer, Jr., is hereby vacated and the case is remanded for further proceedings.
 

 VACATED AND REMANDED.
 

 *
 

 Retired Judge Philip C. Ciaccio, assigned as Justice ad hoc, sitting for Chief Justice Catherine D. Kimball.
 

 [1]
 

 . In financing the purchase, the common owner technically first sold the property to First Homestead and Savings Association, which then sold it to Mr. Botnick. This procedure was a mere formality, and in essence the common owner sold the property directly to Mr. Botnick.
 

 [2]
 

 . La. C.C. art. 741 provides,
 

 Destination of the owner is a relationship established between two estates owned by the same owner that would be a predial servitude if the estates belonged to different owners.
 

 When the two estates cease to belong to the same owner, unless there is express provision to the contrary, an apparent servitude comes into existence of right and a nonap-parent servitude comes into existence if the owner has previously filed for registry in the conveyance records of the parish in which the immovable is located a formal declaration establishing the destination.
 

 [3]
 

 . La. C.C. art. 707 provides,
 

 Predial servitudes are either apparent or nonapparent. Apparent servitudes are those that are perceivable by exterior signs, works, or constructions; such as a roadway, a window in a common wall, or an aqueduct.
 

 Nonapparent servitudes are those that have no exterior sign of their existence; such as the prohibition of building on an estate or of building above a particular height.
 

 [4]
 

 . It is important to note the district court in the instant matter failed to recognize
 
 730 Bienville Partners Ltd.,
 
 unlike the matter before us, was not decided on summary judgment. Rather, that case was decided after the district court considered the evidence presented pursuant to a full trial on the merits.
 

 [5]
 

 . The court of appeal noted its holding had no bearing on the apparent fact that the door between the parking garage and Lot K was a fire exit for the hotel.
 
 730 Bienville Partners Ltd.,
 
 596 So.2d at 840. During the prelimi-naiy injunction proceedings, the parties stipulated "the door is a designated fire door.”
 
 Id.
 
 The court of appeal stated any restriction by the plaintiff on use of the door had to be consistent with the stipulation and comply with the Fire Prevention Code.
 
 Id.
 
 The court of aPPeal further concluded use of door as a designated fire exit does not create a servitude of Seneral, passage through the parking garage to Iberville Street.
 
 Id.
 

 [6]
 

 . Photos in evidence in
 
 730 Bienville Partners Ltd.
 
 revealed an illuminated sign above the passageway door which read "The Saint Louis Hotel.” Also, a sign on the garage’s interior wall indicated the door was an entrance to the Louis XVI Restaurant, which was located inside the hotel. Furthermore, signs on Parcel K’s side of the passageway read "To Parking” and "Exit.” The court of appeal also noted Iberville Street was visible from Parcel K, and the door can be seen from Iberville Street. Additionally, decorative light fixtures adorned each side of the hallway in Parcel K leading to the passageway door. Finally, the garage wall near the passageway was painted to match the walls surrounding the door.
 
 730 Bienville Partners Ltd,
 
 596 So.2d at 839.
 

 [7]
 

 . The 1983 Act of Sale provides, “By reference to the certificates of the Register of Conveyances and Recorder of Mortgages in and for the Parish or County of Orleans annexed hereto it does not appear that said property has been heretofore alienated by the seller or that it is subject to any encumbrance whatever.”
 

 [8]
 

 . The 1950 Subdivision Regulations promulgated by the New Orleans City Planning Commission provide, in pertinent part:
 

 
 *602
 
 Section 4 Standards of Design; (d) Street and Alley Widths; (3) Where it is desirable to subdivide a tract of land, which because of its size or location, does not permit an allotment directly related to a normal street arrangement, there may be established one or more "Places.” Such a "Place” may be the form of a court, a deadend street, or other arrangement; provided, however, that proper access shall be given to all lots from a dedicated "Place” (Street or Court).
 

 [9]
 

 . The 1999 Subdivision Regulations promulgated by the New Orleans City Planning Commission provide, in pertinent part:
 

 Article 5. Design Standards and Principles of Acceptability; Section 5.1. General Principles of Acceptability; 5.1.4. Access to Lot. No subdivision will be approved by the Commission unless it creates a lot or parcel having its principal frontage and access from an officially approved street or place, public or private;
 

 Section 5.5. Lots. Every lot of land hereafter created shall have its principal frontage on and access from an officially approved (public or private) street or place.
 

 [10]
 

 . It is important to note the subdivision regulations are consistent with La. C.C. art. 689, which grants the owner of an enclosed estate a right of passage over neighboring property to the nearest public road.