CRAIN, J.
The defendants appeal a judgment recognizing a servitude of passage and permanently enjoining them from interfering with its use. The plaintiffs answered seeking an increase in damages and an award of attorney fees. We affirm.
FACTS AND PROCEDURAL HISTORY
This litigation involves several parcels of contiguous property located in Tangiphoa Parish, more particularly depicted in the appendix hereto.[1] Plaintiffs Jerelean Arnold Naramore, Tammie Naramore Steib, and Craig Steib collectively own the 9.46-acre parcel identified on the appendix by Naramore's name.[2] The adjacent 9.52-acre *938 parcel to the east is owned by plaintiffs Carol Arnold Martinson and David Henry Martinson. Defendants Baynum and Kayla Aikman own a 1.767 parcel adjacent to the southwest side of the Naramore parcel. An asphalt road, West Sam Arnold Loop, is adjacent to the west side of the Aikman parcel. A gravel road extends from West Sam Arnold Loop through the southern boundary of the Aikman and Naramore parcels. The gravel road is located within an alleged servitude shown on the Bodin survey as the long rectangular area along the southern boundaries of the Aikman and Naramore parcels, and extending across the Martinson parcel into a tract owned by Ottis S. Arnold. The use of the gravel road, and more specifically the existence of the alleged servitude, is the origin of the dispute between the parties.
All of the above property (collectively the "Arnold property") was previously owned by Sam and Vivian Arnold, who acquired it in 1956. Although unclear when the gravel road was built, Sam and Vivian, along with their tenants, began using the road as early as 1960 to access the Arnold's home. The road was also used by the Worley family, the owners of property on the south side of the road, to access their property.
In the early 1980s, Sam and Vivian began transferring the property to their descendants. They first transferred the Martinson parcel to their daughter, Carol Martinson, on March 25, 1980. The act of sale describes the Martinson parcel, along with the following:
[A] servitude 0.45 chains in width in an East-West direction connecting the existing Public Road with servitude on property of Ottis Samuel Arnold in favor of Grace Louise Arnold Mapes, Ottis Samuel Arnold and Jerelean Avis Arnold Naramore as per plat and survey of Leey Mapes of record in COB ----, page ----, dated [.]
The referenced Mapes survey is dated March 20, 1979, and shows a servitude that is approximately the same in size and location as shown on the Bodin survey. The act of sale was recorded in the public records shortly after its execution, but the Mapes survey was not.
On April 28, 1982, Sam and Vivian conveyed to Jeffrey and Cynthia Arnold the 1.75 acres ultimately acquired by the Aikmans on August 13, 1993. The 1982 and 1993 conveyances do not mention the disputed servitude. On October 27, 1983, Sam and Vivian transferred the 9.46-acre parcel to Jerelean Naramore. That act of sale does not mention the servitude, but references the Mapes survey. Naramore transferred approximately four acres to her daughter, Tammie Steib, on May 29, 2008. That conveyance contained a survey identifying the gravel road.
The parties used the gravel road without any significant incidents until late 2010 or early 2011, when log trucks and other heavy equipment used the road in connection with timber operations on the Martinson parcel. Baynum objected and blocked further vehicular traffic beyond his driveway by parking a tractor on the road and pulling a large log across it. He later installed and locked a gate at the entrance to the road near West Sam Arnold Loop. Although he gave a key to some members of the Arnold family, confrontations continued. When efforts to amicably resolve the dispute failed, suit was filed on October 20, 2011.
The plaintiffs allege Sam and Vivian created a servitude of passage over the disputed strip to access all of the Arnold property, which the plaintiffs have continuously used for that purpose before and *939 after their respective acquisitions.[3] Alleging the Aikmans prevented or interfered with use of the servitude, the plaintiffs requested a declaratory judgment recognizing the servitude, injunctive relief prohibiting the Aikmans from interfering with its use, and damages. Following an evidentiary hearing, the trial court issued a preliminary injunction on January 30, 2012, prohibiting the Aikmans from interfering with plaintiffs' use of the alleged servitude.
On May 8, 2013, Lynn and Winifred Worley, owners of the property south of the Aikman and Naramore parcels, filed a petitory action seeking recognition of their ownership of the portion of the Worley property allegedly subject to the servitude. The plaintiffs in this proceeding then amended their petition to include the Worleys as defendants. The two proceedings were consolidated, and the Worleys eventually entered a consent judgment recognizing the servitude along the boundaries described in the Bodin survey.
Responding to a rule filed by the plaintiffs, the trial court found Baynum in contempt of court for violating the preliminary injunction. In a judgment signed September 4, 2013, the trial court declared Baynum, pursuant to his stipulation, "in contempt with no penalty," ordered him to restore the servitude to its original condition by removing certain modifications, and "reserve[ed] in favor of plaintiffs ... all rights for attorney's fees and costs for prosecuting the rule for contempt and for any damages sustained until the trial on the merits."
Trial was scheduled for the week of May 8, 2017. On March 14, 2017, about seven weeks before trial and over five years after suit was filed, the Aikmans requested leave of court to file a reconventional demand against the plaintiffs and a third-party demand against the Aikmans' alleged title insurer. Leave was denied, and the matter proceeded to a bench trial.
Twenty witnesses, including three experts, testified at trial. The parties introduced numerous exhibits, including maps, surveys, and acts of sale reflecting the chain of title for each parcel. After taking the matter under advisement, the trial court ruled in favor of the plaintiffs. Relying, in part, on Louisiana Civil Code article 741 allowing for the creation of a servitude by "destination of the owner," the trial court found Sam Arnold created a servitude of passage used by the Arnold family to access the property for more than thirty years. In a judgment signed July 17, 2017, the trial court recognized the servitude of passage described in the Bodin survey, permanently enjoined the Aikmans from interfering with its use, and awarded $2,000.00 plus legal interest to Tammie Steib and Craig Steib, $1,000.00 plus legal interest to Jerelean Naramore and LouAnn Naramore, and $2,000.00 plus legal interest to Carol Arnold Martinson, David Martinson, and Julie Martinson. The Aikmans appeal, asserting multiple assignments of error, and plaintiffs answered the appeal, seeking an increase in damages and an award of attorney fees.
DISCUSSION
The Aikmans contend the trial court erred (1) by declaring a servitude of passage and permanently enjoining the Aikmans from interfering with its use, (2) by denying a peremptory exception of prescription, and (3) by denying their motion *940 for leave.[4]
Servitude of Passage
Apparent servitudes may be acquired by title, destination of the owner, or acquisitive prescription. La. Civ. Code art. 740. Apparent servitudes are those perceivable by exterior signs, works, or constructions; such as a roadway, a window in a common wall, or an aqueduct. La. Civ. Code art. 707. Nonapparent servitudes are those with no exterior sign of their existence, such as the prohibition of building on an estate or of building above a particular height. Id. A servitude of passage is the right for the benefit of the dominant estate whereby persons, animals, utilities, or vehicles are permitted to pass through the servient estate. La. Civ. Code art. 705. Unless the title provides otherwise, the extent of the right and the mode of its exercise shall be suitable for the kind of traffic or utility necessary for the reasonable use of the dominant estate. Id.
Article 741 defines "destination of the owner" to be "a relationship established between two estates owned by the same owner that would be a predial servitude if the estates belonged to different owners." Article 741 further provides:
When the two estates cease to belong to the same owner, unless there is express provision to the contrary, an apparent servitude comes into existence of right and a nonapparent servitude comes into existence if the owner has previously filed for registry in the conveyance records of the parish in which the immovable is located a formal declaration establishing the destination. [Emphasis added.]
This article implicitly recognizes that when there is only one owner, there is no servitude, because no one can have a servitude on his own property. See Yiannopoulos and Scalise, 4 La. Civ. L. Treatise, Predial Servitudes § 6:38 (4th ed. September 2017 Update). But, when the single estate is divided, or two estates cease to belong to the same owner, an apparent servitude comes into existence of right unless the common owner disavows its existence. See Phipps v. Schupp , 09-2037 (La. 7/6/10), 45 So.3d 593, 601 ; Yiannopoulos and Scalise, at § 6:38.
Whether an apparent servitude has been created by destination of the owner is a factual determination reviewed under the manifest error-clearly wrong standard of review. See Wong v. Alley Square I, L.L.C. , 13-1958, 2014 WL 1778284, p.1 (La. App. 1 Cir. 5/2/14). Under that standard, the appellate court does not decide whether the factfinder was right or wrong; rather, it is required to consider the entire record to determine whether a reasonable factual basis exists for the finding, and whether the finding is manifestly erroneous or clearly wrong. Hayes Fund for First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC , 14-2592 (La. 12/8/15), 193 So.3d 1110, 1116.
The trial court heard from several witnesses, both fact and expert, familiar with the history of the property. Edward Murphy, *941 an attorney accepted by the trial court as an expert in real estate title examination, researched the title and confirmed the property presently owned by the Aikmans, Martinsons, Steibs, and Naramore was previously owned by Sam and Vivian Arnold, who acquired it in 1956. The earliest indication of the road that Murphy found in the public records is a survey by C.M. Moore dated 1952, revised in 1958, and recorded August 3, 1959, which appears to show the roadway. Murphy confirmed the conveyances of the Martinson, Naramore, and Aikman parcels, and that the Mapes survey, referenced in the Martinson and Naramore transfers, was not recorded at the time of those transfers.
William J. Bodin Jr., a licensed civil engineer and surveyor, prepared the Bodin survey and described the servitude based on old maps, court records, and an onsite inspection. The oldest map cited by Bodin is a 1966 survey by Clifford Webb, apparently unrecorded, that shows a "30' LANE" along the northern boundary of the Worley property. On the western end of the disputed strip, Bodin placed the center of the servitude along the common boundary of the Worley and Arnold properties, with the southern half on the Worley property and northern half on what is now the Aikman, Naramore, and Martinson parcels. At its intersection with West Sam Arnold Loop, Bodin described the servitude as 29.7 feet wide. David Bickford, an employee of a surveying firm, went to the site and measured the servitude area and testified it was 29.7 feet wide. The gravel road itself, which Bickford measured as 12 feet wide, is also shown on the Bodin survey and lies entirely on the Aikman and Naramore parcels.
Recent photographs of the disputed strip show an open area bordered by trees in some stretches, with a gravel road running in an east-west direction. Maurice Jordan, the Tangipahoa Parish Engineer, testified the road is private and has never been adopted or maintained by the parish. Winifred Worley and her sister, Lynn Worley, described the origins of the road. According to Lynn, who was 77 at the time of trial, her uncle and Sam Arnold "put up that land" because they each needed access to homes built on the property. She described it as a "little country road" used to access the property for "years and years and years." Winifred, who was 84 when she testified, said Sam and Vivian "always used the road."
Erla Mae Perrilloux, a tenant of the Arnolds, lived at the end of the road from 1960 to 1962. She and her mother-in-law used the road for access. LouAnn Naramore, Jerelean's daughter, testified she used the road to access the property since the early 1960s. She never had problems using the road until Baynum put up the gate and locked it. Sam Naramore, Jerelean's son, testified he used the road for about 50 years as his only means to access the property. The servitude area, according to Sam, is correctly identified in the Mapes survey, which places it in the same approximate location as the Bodin survey.
David Martinson, who was 52 at trial, testified he used the servitude since he was old enough to walk. According to David, the servitude is the only access for the property, and there has never been a period of time when it was not used for that purpose. The Bodin survey correctly shows the location of the gravel road, which David estimated to be about 15 to 20 feet wide. There was not a gate on the road until Baynum installed one, which led to this litigation.
Tammie Steib, another daughter of Jerelean Naramore, lived in a house on the road from 1984 to 1990. She bought a piece *942 of the Naramore parcel in 2008 that contains a residence where her daughter Robin now lives. She testified the cleared area of the servitude is about 30 feet wide, and the gravel road occupies about 20 feet of the servitude. She uses the road to access the property and never had significant problems until February 2011, when Baynum blocked the road just past the entrance to his driveway by putting a log across it and parking a tractor behind the log. Baynum later installed a gate, which he initially left open, but began locking in July 2011, forcing Tammie to park at the gate and walk in. After the preliminary injunction was signed, she had no problems with Baynum for about a year. In March 2013, Baynum began interfering again by digging trenches in the road and placing pipes across it.
Tammie's other daughter, Lisa Jenkins, used the road for access while she lived on the Naramore parcel from 2007 to 2014. Lisa testified the road has been there her whole life, and her family has always maintained it. In 2011, prior to the litigation, she purchased two loads of gravel that were placed on the road from her driveway to West Sam Arnold Loop. For the first four years she lived on the road, the Aikmans did not interfere with her use of it. Baynum then began blocking access to the road by placing logs across it and later by installing a locked gate. Baynum provided keys to Lisa, her husband, and Tammie Steib, but told them they were the only people who could use the road. Although Baynum's conduct improved after the preliminary injunction, he resumed obstructing the road by putting pipes across it and digging trenches in the road. After the contempt hearing, Baynum stopped interfering with the use of the road.
Other witnesses testified about their use of the servitude. Betty Faust used the road for several years beginning around 1970 to visit her grandmother who lived on the road. Jeffrey Wayne Murphy, a tenant, used the road to access the property on a daily basis from 1990 to 1992. Sam Galloway, another tenant, regularly used the road without any interference by the Aikmans from 1995 to 2001. Julie Martinson, David's wife, began using the servitude in 1998.
Baynum testified he bought his parcel in 1993 from Jeffrey Arnold, who told him there was no servitude across the property. His act of sale does not mention the servitude, and when he mortgaged the property, he was told his title was clear. According to Baynum, for the first two years of his ownership, nobody used the road, which he claimed went no further than his driveway. In late 2010 or early 2011, after a bulldozer crossed his property as part of a logging operation, he told the workers he did not want their equipment crossing his property. He pulled a log across the road and later installed the gate, but gave a key to any of the Arnolds who asked for one. After the preliminary injunction was issued, he put pipes on the road and cut ruts in it to discourage speeding. He does not believe the road is the only access to the Arnold property and has seen vehicles entering from Highway 22 to the north. The Aikmans called Walton T. Tate, an attorney accepted as an expert in real estate title examination, who testified he researched the Aikmans' title and found nothing in the public records indicating a servitude over their property.
On appeal, the Aikmans argue the public records do not sufficiently establish the servitude prior to the Aikmans' acquisition in 1993. Thus, under the public records doctrine, they maintain the servitude does not burden their property. Alternatively, the Aikmans contend the plaintiffs have access to their parcels through another servitude, which purportedly runs north *943 and south along the east side of the Arnold property and connects to Highway 22. Neither of these contentions is material to the creation of a servitude by destination under Article 741.
It is undisputed Sam and Vivian Arnold previously owned all of the property presently owned by the Aikmans, Steibs, Martinsons, and Naramore. The record establishes a right of way was cleared and a road was constructed along the disputed strip in the late 1950s or early 1960s to provide access to the property. Since its construction, the road has been apparent and used on a regular basis by the Arnold family and their tenants for access. The construction and use of the road, which is perceivable by exterior signs, works, or constructions, created a relationship between the respective parcels now owned by the Martinsons, Steibs, Aikmans, and Naramore that allowed access to West Sam Arnold Loop. When Sam and Vivian conveyed a portion of the property in 1980 to the Martinsons, an apparent servitude of passage, extending along the visible right of way to West Sam Arnold Loop, was created in favor of the Martinson parcel. See La. Civ. Code arts. 707, 740 -41; Huy Tuyet Tran v. Misuraca , 10-2183, 2011 WL 2617382, p.3 (La. App. 1 Cir. 5/6/11) (holding a servitude of passage was created by destination of the owner when property containing an apparent roadway was divided and sold). The subsequent conveyance of the Aikman parcel in 1982 likewise created a servitude along the same route in favor of the Naramore parcel.
The Aikmans' reliance on the public records doctrine is misplaced. The creation of the servitude was not dependent upon an express declaration in an act of sale, nor did it have to be identified in a survey recorded in the public records. A similar argument was rejected by the supreme court in Phipps , where the court explained:
[T]he defendants maintain because Mr. Phipps could not refer to any "writing, title, survey, or other exterior sign that evidenced the common owner's intent to create an apparent servitude," the common owner did not intend to create a servitude by destination. The defendants concede that an express provision is not required to create a servitude by destination of the owner, but they contend had it existed, it would have shown the common owner intended for the driveway to serve 541 Exposition Boulevard. We find the defendants' argument is without merit, as La. C.C. art. 741 does not require an express provision in order for a servitude by destination of the owner to exist.
Moreover, the common owner did not provide an express provision that a servitude by destination was not created when he sold 541 Exposition Boulevard. Under La. C.C. art. 741, the common owner must disavow the existence of a predial servitude when both estates cease to belong to him, or an apparent servitude comes into existence as of right.
Phipps , 45 So.3d at 601.
The act of conveyance by Sam and Vivian to the Martinsons does not contain an express disavowal of the existence of the servitude. To the contrary, the conveyance recognizes an east-west servitude, approximately 30 feet wide, "connecting the existing Public Road with servitude of Ottis Samuel Arnold," as set forth in the Mapes survey. Although that survey was not recorded at the time, it confirms the servitude described in the act of conveyance is, in fact, the servitude used for many years to access the Arnold property. While the failure to record the Mapes survey may have prevented the creation of a servitude *944 by title , we cannot infer, as suggested by the Aikmans, an intent to disavow the servitude merely because the survey was not recorded.
The Aikmans erroneously rely on Louisiana Civil Code articles 689 and 694, governing enclosed estates, to argue the servitude should not be recognized because the plaintiffs purportedly have access to their property by another route, failed to offer any compensation for the servitude, or voluntarily enclosed their estates. The requirements of Articles 689 and 694 do not apply to the creation of a servitude by destination of the owner under Article 741. The plaintiffs did not have to prove their property was landlocked, nor do they have to compensate the Aikmans for a servitude created years before the Aikmans acquired their property.
The plaintiffs had to prove that when Sam and Vivian Arnold owned all the property, a "relationship" existed between the parcels that would have been a predial servitude if the parcels belonged to different owners; and when Sam and Vivian conveyed the parcels, they did not expressly disavow the servitude. See La. Civ. Code art. 741 ; Huy Tuyet Tran , 2011 WL 2617382 at p.3 ; Jackson v. Jackson , 00-2591 (La. App. 1 Cir. 3/6/02), 818 So.2d 192, 198. The record reasonably supports the trial court's conclusion the plaintiffs met that burden of proof. We find no manifest error in the trial court's factual determination that a servitude of passage was created by destination of the owner. We likewise find no error in the trial court's issuance of a permanent injunction prohibiting the Aikmans from interfering with the use of the servitude. This assignment of error is without merit.[5]
Exception of Prescription
The Aikmans argue the trial court erred by denying a peremptory exception of prescription set for hearing at trial. Although the trial court's judgment does not address the exception, silence in a judgment as to any issue before the trial court is deemed a rejection of that demand or issue. The exception is thus deemed denied. See Robertson v. Sun Life Financial , 09-2275 (La. App. 1 Cir. 6/11/10), 40 So.3d 507, 510.
A predial servitude is extinguished by nonuse for ten years. La. Civ. Code art. 753. When the prescription of nonuse is pled, the owner of the dominant estate has the burden of proving he or some other person made use of the servitude during the period of time required for the accrual of the prescription, such that no continuous ten-year period of nonuse occurred. La. Civ. Code art. 764 ; Claitor v. Brooks , 13-0178 (La. App. 1 Cir. 12/27/13), 137 So.3d 638, 643, writ denied , *945 14-0198 (La. 4/4/14), 135 So.3d 1182. A predial servitude, such as a servitude of passage, is preserved by use by anyone, even a stranger, if used as appertaining to the dominant estate. La. Civ. Code art. 757 ; Claitor , 137 So.3d at 643. The phrase "appertaining to the dominant estate" means someone must use the servitude for the purpose of going onto the dominant estate for some legitimate purpose, either to see the owner or for something connected with the use of that property. See Claitor , 137 So.3d at 643 ; Dupont v. Hebert , 06-2334 (La. App. 1 Cir. 2/20/08), 984 So.2d 800, 806, writ denied, 08-0640 (La. 5/9/08), 980 So.2d 695 ; Palace Properties, L.L.C. v. Sizeler Hammond Square Limited Partnership , 01-2812 (La. App. 1 Cir. 12/30/02), 839 So.2d 82, 94, writ denied, 03-0306 (La. 4/4/03), 840 So.2d 1219. Partial use of a servitude constitutes use of the whole. La. Civ. Code art. 759. Therefore, using part of the area burdened with a predial servitude interrupts the prescription of nonuse as to the entire area. Claitor , 137 So.3d at 643-44. Whether a servitude is lost to nonuse is a factual determination subject to the manifest error-clearly wrong standard of review. See Palace Properties, L.L.C. , 839 So.2d at 89 ; Grieshaber Family Properties, LLC v. Impatiens, Inc. , 10-1216 (La. App. 4 Cir. 3/23/11), 63 So.3d 189, 194.
The Aikmans maintain no attempt was made to use the servitude until over ten years after their acquisition in 1993. According to the Aikmans, they permitted the plaintiffs, whom they characterize as precarious possessors, access "over their driveway" until the plaintiffs and their friends "became a nuisance."
Use of the servitude was well established at trial. A dozen witnesses testified the servitude was regularly used from as early as 1960 through the date of the trial, except when prevented by the Aikmans, to access the property currently owned by the Martinsons, Steibs, and Naramore. The record does not indicate any meaningful period when the servitude was not used by the Arnold family or their tenants. This use, some of which predated the Aikmans' acquisition by decades, was not reduced to acts of precarious possession just because the Aikmans allowed the use until it purportedly became a "nuisance." The plaintiffs were exercising, and preserving, a right vested years before the Aikmans' acquisition. The trial court did not err in denying the exception of prescription.
Motion for Leave
The Aikmans argue the trial court erred by denying their motions for leave seeking permission to file a reconventional demand against the plaintiffs and demanding compensation for the servitude under Article 689 and damages for trespass, and by denying a third-party demand against the Aikmans' alleged title insurer.
After an answer to the principal demand is filed, an incidental demand may be filed, with leave of court, "if it will not retard the progress of the principal action." La. Code Civ. Pro. art. 1033. A trial court has broad discretion in deciding whether to allow an incidental demand to be filed after the answer to the principal demand is filed. Marshall v. Air Liquide-Big Three, Inc. , 11-1239 (La. App. 4 Cir. 4/11/12), 89 So.3d 427, 429.
The subject motions were filed only weeks before trial, after the case had been pending for over five years. The proposed demands assert claims available to the Aikmans from the outset of the litigation; the pleadings do not allege claims arising thereafter or revealed during the course of discovery. With a trial date approaching, the trial court could have reasonably concluded the demands would delay the principal action. Under these circumstances, the trial court did not abuse its discretion *946 by denying leave to file the incidental demands. This assignment of error is without merit.
Answer to Appeal
In an answer to the appeal, the plaintiffs seek an increase in damages awarded for Baynum violating the preliminary injunction. The trial court awarded $2,000.00 to the Steibs, $1,000.00 to the Naramores, and $2,000.00 to the Martinsons, plus accrued legal interest from date of judicial demand until paid.
Disobedience of or resistance to a temporary restraining order or preliminary or final injunction is punishable as a contempt of court. La. Code Civ. Pro. art. 3611 ; see also La. Code Civ. Pro. art. 224(2). The court may cause to be undone or destroyed whatever was done in violation of an injunction, and the person aggrieved thereby may recover the damages sustained as a result of the violation. La. Code Civ. Pro. art. 3611. The trial court has great discretion in its assessment of quantum, and an appellate court should rarely disturb an award on review. See La. Civ. Code arts. 1999 and 2324.1 ; Guillory v. Lee , 09-0075 (La. 6/26/09), 16 So.3d 1104, 1116. To modify an award of damages on appeal, the record must clearly reveal the factfinder abused its discretion. See Guillory , 16 So.3d at 1117.
The evidence establishes Baynum violated the preliminary injunction by digging trenches in the road and placing small pipes across it. Those impediments, according to Baynum, were intended to discourage speeding, not to prevent use of the servitude, as evidenced by the fact his mother drove across the same road to get to her house. While the violations of the preliminary injunction caused some inconvenience, we do not find the limited damage evidence mandates greater awards. Because the awards are not abusively low, we will not increase them.
The plaintiffs also seek an award of attorney fees. Pursuant to Louisiana Revised Statute 13:461 1(1)(g), "[t]he court may award attorney fees to the prevailing party in a contempt of court proceeding." The legislature's use of the word "may" means an award of attorney fees is discretionary, not mandatory. See Roper v. City of Baton Rouge/Parish of East Baton Rouge , 16-1025 (La. App. 1 Cir. 3/15/18), 244 So.3d 450, ---- (2018 WL 1324454) ; Quality Environmental Processes, Inc. v. IP Petroleum Company, Inc. , 16-0230 (La. App. 1 Cir. 4/12/17), 219 So.3d 349, 375, writ denied , 17-00915 (La. 10/9/17), 227 So.3d 833 ;. Appellate review of discretionary decisions is conducted under the "abuse of discretion" standard of review. Id. The record reflects Baynum's violations of the preliminary injunction were relatively minor. Under these circumstances, the trial court did not abuse its discretion in declining to award attorney fees. The answer to the appeal is denied.
CONCLUSION
The July 17, 2017 judgment is affirmed. All costs of this appeal are assessed to Baynum and Kayla Aikman.
AFFIRMED.
Attachment *947 --------

The appendix is an excerpt from a survey prepared by William J. Bodin Jr., dated August 17, 2011, introduced in evidence at trial. The survey presents the properties in a west (left side of page) to east manner.

Naramore's name is incorrectly spelled "Naramone" on the survey.

The named plaintiffs are Jerelean Arnold Naramore, Tammie Naramore Steib, Craig Steib, LouAnn Naramore, Carol Arnold Martinson, David Henry Martinson, and Julie Faust Martinson.

The Aikmans' appellate brief lists eight assignments of error, one of which generally asserts the trial court erred by signing a judgment declaring the existence of the access servitude, adopting the Bodin survey, granting the permanent injunction, and awarding damages. For that assignment, the Aikmans' brief addresses only the declaration of the servitude and granting the injunction, but not the adoption of the Bodin survey to identify the servitude boundaries or the damage awards. We thus consider any issues related to the latter matters abandoned. See Uniform Rules, Courts of Appeal, Rule 2-12.4B(4). For the same reason, we do not consider another of the assignments of error related to Baynum being in contempt of court.

In related assignments of error, the Aikmans contend the trial court erred by allowing evidence of the servitude in the absence of any recorded acts of sale establishing it, and erred by failing to sustain "on its own" an exception of no cause of action, again arguing plaintiffs have other access to their property. For the reasons previously provided, these assignments of error are without merit. The Aikmans also assign error to the trial court granting the preliminary injunction in the judgment signed and noticed on January 30, 2012. Because the Aikmans did not timely appeal that judgment, we have no jurisdiction to review it. See La. Code Civ. Pro. art. 3612C; Jim & Lu Enterprises, Inc. v. Alcoholic Beverage Control Board for the City of Baton Rouge & East Baton Rouge Parish , 99-2907 (La. App. 1 Cir. 12/22/00), 778 So.2d 75, 79-80. In their final assignment of error on the merits, the Aikmans assert the trial court erred in granting a permanent injunction without proof of irreparable injury. Irreparable injury is not necessary to obtain an injunction prohibiting a disturbance of the possession of a real right. See La. Code Civ. Pro. art. 3663(2) ; Pierce v. McCoy , 16-0243 (La. App. 1 Cir. 10/31/16), 207 So.3d 1069, 1074. These assignments of error are without merit.