PAUL A. BONIN, Judge.
Roger Phipps claims that the property belonging to his next-door neighbors is burdened with a servitude of vehicular passage in favor of his property or, in the terminology of the Civil Code, his estate. Some years ago the trial court granted summary judgment in favor of 'those neighbors, Cynthia Schupp and Roland Cutrer, Jr.,[1] but the Louisiana Supreme Court reversed that judgment and remanded the matter to the trial court. On remand, the trial court again granted summary judgment but this time in favor of Mr. Phipps. The trial court ruled that a gratuitous servitude of passage under Article 694 of the Civil Code had been created by the common ancestor-in-title and that the Schupps were required, at their expense, to tear down the fence built by them, as well' as a portion of their home, which was constructed by their vendor, in order to permit Mr. Phipps’ exercise of his right of vehicular passage over the Schupps’ property. The Schupps have suspensively appealed this summary judgment.[2]
*216 ^Following our de novo review, we conclude that a genuine issue of material fact exists as to whether Mr. Phipps’ estate is enclosed, rendering summary judgment under Article 694 improper. Moreover, we find that the trial judge committed legal error in failing to recognize that subsequent third-party purchasers, including the Schupps, are protected by the Public Records Doctrine and cannot be obligated to afford gratuitous passage across their property in this circumstance. The Public Records Doctrine requires that Mr. Phipps timely exercise his right to have this servitude fixed either by agreement with Richard Katz, the common ancestor-in-title, or by judgment of the court before Mr. Katz sold his property to a third-party purchaser. Accordingly we reverse the granting of the summary judgment creating a gratuitous servitude of passage in favor of Mr. Phipps under Article 694.
We next consider whether the summary judgment in favor of Mr. Phipps could nonetheless be upheld under Article 741 of the Civil Code, which provides for the establishment of a servitude (of passage) by the destination of the owner. But we conclude after our de novo review that the summary judgment and relief granted to Mr. Phipps in the trial court cannot be supported by a finding that an apparent servitude of vehicular passage exists under Article 741 because genuine issues of material fact remain as to whether this apparent servitude was created as of right by informal destination and, if so, whether the extent and manner of use of this servitude was vehicular or only pedestrian in nature.
^Because Mr. Phipps, however, may be able to establish after a trial on the merits that he is entitled to demand either in his now-converted petitory action a servitude of vehicular passage under Article 741 from the Schupps or, if unsuccessful, to have a legal servitude of vehicular passage fixed under Article 689 of the Civil Code from either the Schupps or another neighbor, we remand this matter to the trial court for further proceedings.
We explain our decision in considerably greater detail below. In Part I we set out the background facts which are necessary to an understanding of our decision, review the course of the litigation, and summarize the Schupps’ assignments of error and the parties’ arguments in briefing. In Part II we discuss the reasons why we find that the trial judge erred in granting summary judgment to Mr. Phipps and in fixing a servitude of vehicular passage under Article 694. In Part III we highlight and reiterate the Supreme Court’s earlier decision that there are genuine issues of material fact which preclude summary judgment granting relief to Mr. Phipps under Article 741, thereby necessitating remand again. Then in Part IV we address the alternative possibility pointed to by the Supreme Court’s decision in this matter that, if an apparent servitude of vehicular passage was not created by informal destination of Mr. Katz under Article 741, Mr. Phipps would be entitled to the fixing of an indemnified servitude under Article 689 because his estate would be enclosed. In addressing this alternative we reject the Schupps’ contentions that Mr. Phipps’ property is not enclosed because of a 1928 City of New Orleans Municipal Ordinance respecting access to Exposition Boulevard in|4Audubon Park or because Mrs. Phipps, a co-owner in indivisión with Mr. Phipps, having confessed under oath that she acquiesced to the construction made by the Schupps’ vendor, self-enclosed their estate. In Part V we summarize the practical con *217 sequences of our holding with regard to its effects on the parties.
I
In this Part we first set forth the facts pertinent to our review of the trial judge’s ruling on the parties’ respective motions for summary judgment. We then relate the course of the proceedings to date, and lastly we summarize the Schupps’ assignments of error and the parties’ arguments contained in their respective briefings.
A
The uptown New Orleans- properties at issue in this dispute are adjacent to each other. They both face Exposition Boulevard, which is neither a public nor a private street; rather, it is a pedestrian sidewalk on the eastern border of Audubon Park. 541 Exposition is currently owned in indivisión by Mr. Phipps, the plaintiff-ap-pellee, and his wife, who, again, is not a party. 543 Exposition Boulevard is currently owned by the Schupps, the defendants-appellants; the. lot borders Patton Street where that public road dead-ends at Exposition Boulevard.
Originally, both properties were owned by Richard Katz. According to surveys, the homes situated on them may have at some point been joined together by a common bathroom or shared an outdoor deck. In 1978, Mr. Katz formally subdivided the single lot, then-designated as Lot F, into Lots F-l (541) and F-2 |a(543). He then sold Lot F-l (541) to Michael Botnick but retained ownership of Lot F-2 (543), which has direct access to Patton Street. Thus, Mr. Katz may have enclosed Lot F-l (541) at the time of its sale. The sale is the genesis of this controversy because Lot F~ 1 (541) has no direct vehicular access to a public or private street. It is undisputed that no conventional servitude of passage was created by written agreement.
Mr. Phipps claims that there was, at the time of this first sale, a paved driveway from Patton Street which extended over Lot F-2 (543), passed through a carport-like structure under the second story of the home on Lot F-2 (543), and continued unobstructed into the garage in the back of the home on Lot F-l (541). It is this driveway, along with a key to the gate controlling access to that driveway, given to him by Mr. Botnick, which Mr. Phipps contends makes this servitude by informal destination sufficiently perceivable by exterior signs, works, or constructions? under Article 741.
Mr. Botnick sold Lot F-l (541) to Mr. Phipps and his wife in 1982. At the time Mr. Katz continued to own Lot F-2 (543). It is undisputed that neither Mr. Botnick nor Mr. Phipps instituted any legal action to fix a gratuitous servitude under Article 694 while Mr. Katz still owned Lot F-2 (543). Mr. Katz sold Lot F-2 (543) in 1983. Lot F-2 (543) was re-sold several times thereafter, and, eventually, in 2001, Dr. Maria Gonzalez, who is not a party, acquired title.
In 2003, Dr. Gonzalez renovated her home, constructing a room in the space which Mr. Phipps identifies as the former carport-like area and which now |fiobstructs what Mr. Phipps describes as a driveway. The building-permit application for the renovation states, however, that the area was used as a patio. Mrs. Phipps admits under oath to having verbally consented to Dr. Gonzalez’s renovation conditioned upon, she claims, retaining pedestrian access to Lot F-l (541) via an adjacent walkway. And it is undisputed that Mr. Phipps did not institute any legal action against Dr. Gonzalez so that he could use the driveway for vehicular access to his property.
*218 In 2006, the Schupps acquired Lot F-2 (543) from Dr. Gonzalez. No reference to the servitude was contained in the title, and no other evidence was attached to any of the motions for summary judgment to indicate that notice was provided of the existence of the servitude. The Schupps thereafter built a fence on the property line and thus prevented Mr. Phipps from accessing Patton Street via Lot F-2 (543) even on foot.
B
Within one year of the Schupps’ construction of the fence, Mr. Phipps filed a possessory action seeking restoration of possession of vehicular passage over Lot F-2 (543) that, he claimed, he enjoyed prior to Dr. Gonzalez’s renovation. This action claimed that Mr. Phipps’ possession ought to be maintained.
The Schupps initially filed an exception of no cause of action, which was denied by the district court. In December 2007, the Schupps filed both a motion for summary judgment seeking dismissal of Mr. Phipps’ possessory action and an exception of prescription. Mr. Phipps claimed in his opposition to the Schupps’ [7motion for summary judgment that he had acquired ownership of a servitude by informal destination under Article 741 and that the Schupps should be ordered to remove not only their newly-constructed fence but also the carport enclosure renovation. The trial court then granted the Schupps’ exception of prescription as to the vehicular component of the servitude. The trial court also granted the motion for summary judgment in favor of the Schupps, finding that the mere existence and use of the concrete driveway was insufficient to evidence Mr. Katz’s intent to form a servitude by informal destination under the standards set forth in La. Civil Code arts. 707, 741.
After a de novo review, we affirmed that trial court’s judgment; finding no error in granting the Schupps’ motion for summary judgment, we agreed with the trial court’s reasoning that, under 730 Bienville Partners Ltd. v. First Nat. Bank of Commerce, the “historical use of a particular pathway cannot serve as proof of intent” óf the common owner to create an apparent servitude by destination and that there must be “exterior signs” demonstrating the nature and extent of the servitude claimed. See Phipps v. Schupp, 08-1487, pp. 7-8 (La.App. 4 Cir. 8/19/09), 19 So.3d 38, 43 (citing 596 So.2d 836, 840 (La.App. 4th Cir.1992)). We found that Mr. Phipps failed to carry his burden of proof due to his inability to show that exterior signs existed evidencing Mr. Katz’s intent to create a servitude by destination. See id., 08-1487, p. 8, 19 So.3d at 43.
The Louisiana Supreme Court resuscitated Mr. Phipps’ claim by vacating the summary judgment rendered in favor of the Schupps and remanding the matter 18to the district court. See Phipps v. Schupp, 09-2037, p. 16 (La.7/6/10), 45 So.3d 593, 603. First and very importantly, the Supreme Court found that genuine issues of material fact existed as to whether the driveway,? which Mr. Katz left in place when the property was subdivided, evidenced an intent to create a predial servitude for the benefit of Lot F-1 (541) under Article 741. See id., 09-2037, p. 11, 45 So.3d at 600. The Supreme Court distinguished 730 Bienville Partners because the paved driveway from Mr. Phipps’ garage through the Schupps’ property to Patton Street could conceivably evidence an intent to create an apparent servitude by destination. See id., 09-2037, pp. 10-11, 45 So.3d at 600. The Supreme Court also mentioned other evidence that could serve to clarify Mr. Katz’s intent to create a servitude under Article 741: a key given *219 to Mr. Phipps by Mr. Botnick that unlocks the gate which provides access to the driveway and Mr. Katz’ presumed compliance with a 1950 subdivision regulation that required that all parcels of land in á subdivision to have frontage on a public street. See id., 09-2087, pp. 18-14, 45 So.3d at 601-02. Second and alternatively, if a servitude by informal destination was not created, the Supreme Court also pointed out that Mr. Phipps, as the owner of an enclosed estate, may be entitled to a legal servitude of passage over the Schupps’ property to Patton Street under Article 689. See id., 09-2037, pp. 6-7, 45 So.3d at 598.
The Supreme Court also reversed the trial court’s decision to grant the Schupps’ exception of prescription, finding that the one-year prescriptive period was not triggered until Mr. Phipps’ possession of the servitude was completely 19obstructed by the Schupps’ construction of the fence. See id., 09-2037, p. 15, 45 So.3d at 602-03. The Supreme Court noted that, under La. Civil Code art. 759, Mr. Phipps’ partial use of the servitude-as a walkway constituted use of the entire indivisible, claimed predial servitude. See id., 09-2037, pp. 15-16, 45 So.3d at 603.
On remand, Mr. Phipps filed a supplemental and amending petition. The petition added the Audubon Park Commission and the City of New Orleans as defendants in the suit. Mr. Phipps also amended his claim to request that, in the event of a denial of his claim for a servitude by destination of the owner under Article 741, his gratuitous servitude under Article 694 be restored and - recognized. Finally, Mr. Phipps alternatively requested that the district court recognize his right of pás-sage under Article 689 with indemnity to the Schupps.
The parties conducted additional discovery, including deposing both Mr. Katz and Mr. Botnick. The Schupps answered Mr. Phipps’ supplemental and amending petition. The Auduhon Commission filed an exception of prescription. Motions for summary judgment were thereafter filed by the Schupps, Mr. Phipps, the Audubon Commission, and the City of New Orleans.
On May 13, 2013, the district judge held a hearing on these motions for summary judgment. On October 15, 2013, the district judge granted summary judgment in favor of Mr. Phipps and against the Schupps, recognizing and restoring an Article 694 gratuitous servitude of vehicular passage over the entire width and length of .the concrete driveway extending from Patton Street through Imthe immovable property located at Lot F-2 (543) and into the garage on Lot F-l (541). As a result, the Schupps were ordered to remediate their fence and modify or remove their enclosed carport so that both would cease to' obstruct Mr. Phipps’ exercise of his right of passage over a restored concrete driveway. While the judgment did not explicitly impose costs upon the Schupps, the language of Article 694 implies, however, that the Schupps would bear the costs of the removal and modification of the fence and carport.[3]
The district judge then decreed Mr. Phipps’ motion for summary judgment seeking the recognition of an Article 741 servitude to be moot, denied the Schupps’ cross-motion for summary judgment, overruled the Audubon Park Commission’s exception of prescription, and granted motions for summary judgment in favor of *220 the Audubon Commission and the City of New Orleans.
The district judge attached written reasons in support of his decision to the judgment. The district judge began by considering three types of servitudes of passage: an Article 694 gratuitous right ,of passage, an Article 741 servitude by informal destination, and an Article 689 indemnified right of passage. The trial judge then found that the Supreme Court incorrectly directed the district court to consider an Article 689 right of passage on remand and, citing Patin v. Richard, 291 So.2d 879 (La.App. 3rd Cir.1974), instead applied, what it termed, a self-executing Article 694 gratuitous right of passage. The trial judge found that Mr. Katz voluntarily alienated a part of his estate and rendered Lot F-1 (541) an [n enclosed estate and that Mr. Phipps, as the vendee of Mr. Botnick with regards to this property, is entitled to a gratuitous right of passage. The trial judge found that the restoration of Mr. Phipps’ right of passage along the driveway was not impossible despite the great inconvenience experienced by the Schupps; that Mr. Phipps did not voluntarily enclave himself under La. Civil Code art. 693; and that Mrs. Phipps’ consent to the enclosure of the carport was conditional on the continued use of the walkway adjacent to the carport. The trial judge lamented that “the least equitable aspect of this case is the need for the enclosed carport to be altered or torn down.” The reasons for judgment did note that this servitude was not included on the title and that the renovation of the old driveway would have made it nearly impossible for the Schupps to realize that the servitude existed. The trial judge nonetheless found that the gratuitous servitude under Article 694 existed and that Mr. Phipps’ possession of that servitude must be restored.
The trial judge also found that the driveway predated the subdivision of the property and that it represented the shortest path to the nearest public street (Patton Street) for Lot F-l (541). The trial judge finally noted that Municipal Ordinance 10,-353 “addresses only those properties along Exposition Boulevard that had no outlet to a public road at the time the ordinance was passed” in 1928, which greatly predates the subdivision of this property.
Following the judgment of the trial court, the Schupps filed a motion for new trial seeking review of whether Mr. Phipps voluntarily enclaved himself under | ^Article 693, thus rendering Lot F-l (541) unable to demand a right of passage from neighboring properties. The trial court thereafter denied this motion for new trial.
C
1
The Schupps suspensively appealed and seek the reversal of. the trial court’s grant of summary judgment in favor of Mr. Phipps. In their initial briefing, the Schupps argue that the trial judge committed four errors and seek relief under La. Civil Code art. 695, demanding that the servitude fixed by the trial court be relocated.
First, the Schupps claim that the trial court erred in finding that Municipal Ordinance 10,353 does not apply to Lot F-1 (541). The trial court held that the municipal ordinance only applied to those properties that did not have access to a public road at the time of its passing in 1928. The Schupps claim that the language of the municipal ordinance clearly applies to Lot F-l (541) and provides Mr. Phipps with pedestrian and vehicular access to his property through a gravel road in Audubon Park that currently stops just before *221 Mr. Phipps’ riverside property line. The Schupps claim that the municipal ordinance renders Mr. Phipps’ property not enclosed.
Second, the Schupps claim that the trial court erred in finding that Mrs. Phipps’ oral consent to Dr. Gonzalez’s enclosure of the carport did not amount to self-enclosure of Lot F-l (541) under Article 693, thus blocking Mr. Phipps from | ^enforcing a right of passage against his neighbors. The Schupps filed a motion for new trial requesting that the trial court consider Mrs. Phipps’ judicial confession that she consented to the enclosure of the driveway and that the court find the nature of the servitude was altered from vehicular to pedestrian under La. Civil Code art. 729. The Schupps claim that the trial court improperly found Mrs. Phipps’ consent to be conditional based on continued pedestrian access to Lot F-l (541) through an adjacent walkway. The Schupps argue that a determination as to Mrs. Phipps’ subjective intent was not appropriate during summary judgment proceedings and furthermore that her consent should not be viewed as conditional, due to the permanency of the obstructing structure that she consented to be built.
Third, the Schupps claim that the trial court erred in striking as hearsay certain paragraphs from Mrs. Phipps’ July 14, 2008 affidavit, which stated that she consented to the enclosure of the driveway but retained pedestrian access.
Fourth, the Schupps claim that the trial court failed to apply La. Civil Code art. 730 and construe all doubt as to the use and existence of the servitude in favor of the servient estate. This interpretive method, the Schupps contend, should have resulted in the trial court finding that Mr. Phipps is only entitled to a pedestrian servitude, as there is considerable doubt as to whether Mrs. Phipps permanently altered the’ servitude when she consented to the enclosure.
Lastly, the Schupps seek relief under Article 695 and demand relocation of | Mthe servitude fixed by the trial court.[4] The Schupps claim that this action is not untimely as this relief is only available after a servitude has been fixed by judicial decision. The Schupps argue that the servitude set by the trial court is overly burdensome on their estate' and that this servitude should be relocated to the. front of Mr. Phipps’ home to follow the gravel path that runs adjacent to Exposition Boulevard in Audubon Park. The Schupps claim that it will cost $163,500 to comply with the trial court’s judgment requiring them to demolish part of their home. The Schupps contend that the passage through Audubon Park provides Mr. Phipps with the same right of ingress and egress currently enjoyed by his neighbors and that the new passage would require that the gravel road authorized by Municipal Ordinance 10,353 be extended about twenty feet.
2
Mr. Phipps filed a brief responding to the Schupps’ arguments.
First, Mr. Phipps argues that the trial court properly granted a mandatory? servitude of passage under Article 694. Mr. Phipps contends that Mr. Katz, when he sold Lot F-l (541) to Mr. Botnick, enclosed that property, granting to its owners the gratuitous right of passage across Lot F-2 (543) to a public road, and that the location of that passage should be re *222 stored to where it was previously exercised — the existing concrete driveway.
Second, Mr. Phipps contends that Municipal Ordinance 10,353 does not apply to Lot F-l (541). When the municipal ordinance was enacted in 1928, Lot F had means of ingress and egress by way of Patton Street as the property had not yet been subdivided. As a result, Mr. Phipps, relying on Bourg v. Audubon Park Comm’n, 89 So.2d 676, 677-79 (La.Ct.App. Orl.1955), argues that Lot F was not granted the privilege of a passageway over Audubon Park’s property as the ordinance’s language makes clear that it only applied to those properties without access to a public road prior to the ordinance’s enactment. It is undisputed that Mr. Katz did not subdivide the property until fifty years after the ordinance was passed.
Third, Mr. Phipps, relying on LeBlanc v. Thibodeaux, 615 So.2d 295 (La.1993), argues that Mrs. Phipps’ oral consent to Dr. Gonzalez’s renovation of the driveway does not constitute self-enclosure under Article 693. Mr. Phipps argues that this provision has been narrowly-interpreted and should only apply when an owner enclaves his own property through the sale of part of his property. Mr. Phipps further argues that, under La. Civil Code arts. 650 and 652, predial servitudes are “indivisible” in nature and “inseparable” from the dominant estate. Thus, Mr. Phipps claims that this servitude could not be divided into vehicular and pedestrian servitudes such that Mrs. Phipps could consent to limit the legal obligations of the servient estate; that any such agreement would be against public policy; and that a “fair reading” of the reasons for judgment show that the trial judge made no such finding as to the subjective intent of Mrs. Phipps.
11fiFourth, in regards to the Schupps’ claim that the trial court failed to take into account the presumption in favor of the servient estate under Article 730, Mr. Phipps claims that this provision is inapplicable to this specific servitude as it applies only to conventional servitudes established by title. Mr. Phipps claims that an Article 694 servitude is legal in nature. Furthermore, Mr. Phipps contends that, even if Article 730 is applicable, the Schupps have failed to show any abuse of discretion by the trial court.
Fifth, Mr. Phipps contends that the paragraphs in Mrs. Phipps’ affidavit were properly excluded by the trial court as hearsay at the request of counsel for the Schupps. Mr. Phipps points out that the Schupps are actually seeking review of a decision to grant their own motion to strike and that review of that ruling should be refused. Furthermore, Mr. Phipps contends that the statements were properly excluded as hearsay.
Finally, Mr. Phipps argues that the location of a gratuitous servitude of passage under Article 694 is mandated by statute. Article 694 requires that the servitude must be located where the passage was previously exercised. Thus, Mr. Phipps contends that it would be inappropriate to relocate the passage to run along the gravel road in Audubon Park!
The Audubon Commission, despite Mr. Phipps’ decision to not appeal the trial judge’s ruling granting motion for summary judgment in their favor, filed a brief as well. First, the Commission further argued that Municipal Ordinance 10,353 does not apply to Lot F-l (541). The Commission claimed that the | ^applicability of the ordinance has already been considered by the Supreme Court in Bourg. Second, the Commission contested the Schupps’ request to relocate the servitude pursuant to Article 695 as untimely and inappropriate to raise for the first time on appeal. The Commission contends that a trial court would first need to make *223 factual determinations before weighing the merits of this claim for relocation and that it would be inappropriate for the appellate court to make that ruling.
3
In reply to the briefing of Mr. Phipps and the Audubon Commission, the Schupps clarify three of their arguments and respond to the Commission and Mr. Phipps’ contentions. First, in regards to their claim for relocation of the servitude under Article 695, the' Schupps claim that the trial court has already found that they would be “greatly inconvenienced by the restoration of a vehicular servitude across them narrow backyard.” As a result, the Schupps argue that the trial judge will not need to determine whether the alternative route is more convenient to the servient estate. Rather, the Schupps contend that they must show that the proposed route “affords the same facility to the owner of the enclosed estate.” La. Civil Code art. 695. The Schupps argue that the record contains sufficient information for this determination on appeal or, alternatively, request remand. The Schupps addressed Mr. Phipps’ argument that the passage of Article 694 is mandatory by contending that Article 695 applies to servitudes judicially-fixed under Article 694 as all are part of the codal scheme modifying enclosed estates. The Schupps also responded to the Commission’s argument that their request for relocation was prematurely | IRfiled by asserting that the right to relocation can only be demanded after a servitude is judicially-fixed.
Second, the Sehupps elaborated on their argument that Mrs. Phipps consented to the enclosure of the servitude and that Mr. Phipps is therefore barred under Article 693 from demanding passage. The Schupps addressed Mr. Phipps’ contention that any consent would be without legal effect and is therefore null and void as such agreements are against public policy. The Schupps argue that self-enclosure is an exception to the public policy against enclosed estates and that agreements to alter the nature of servitudes to be pedestrian only should be upheld.
Third, the Schupps answered the Commission’s contention that the Supreme Court has previously addressed the applicability of Municipal Ordinance 10,353 to properties similarly situated to Mr. Phipps’. The Schupps attached a copy of this ordinance in an application for rehearing to the Supreme Court, arguing that Mr. Phipps’ property was not enclosed as a result of the access provided thereunder. The application for rehearing was denied.
II
We now address whether the summary judgment granted in favor of Mr. Phipps can be upheld based upon an Article 694 servitude.
An essential element of asserting the right to have a gratuitous servitude of passage fixed by the trial court under Article 694 is proof that the' dominant estate is enclosed.? Here, as will be more fully explained below, there is a genuine issue of material fact as to whether the dominant estate, Lot F-l (541), is enclosed, and | ^summary judgment based upon Article 694 is accordingly inappropriate. Moreover, because no owner of the dominant estate, including Mr. Phipps, enforced the right to fix the servitude under Article 694 while Mr. Katz continued to own the ser-vient estate, that right cannot be exercised against innocent third-party purchasers, including the Schupps, on account of the Public Records Doctrine. Thus, under the facts of this case, even if it were to be determined after appropriate proceedings that the dominant estate was enclosed, Mr. *224 Phipps cannot assert a right to fix an Article 694 servitude against the Schupps.[5]
A
We review the granting or denial of a summary judgment de novo. See Part III-A, post. Mr. Phipps may only be granted summary judgment if “no genuine issue as to material fact” exists and he “is entitled to judgment as a 'matter of law....” La. C.C.P. art. 966 C(1). “A fact is material if it potentially ensures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the legal dispute.” Jackson v. City of New Orleans, 12-2742, p. 5 (La. 1/28/14), 144 So.3d 876, 882. “A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate.” Smitko v. Gulf South Shrimp, Inc., 11-2566, p. 8 (La.7/2/12), 94 So.3d 750, 755.
| Article 694 provides:
When in the case of partition, or a voluntary alienation of an estate or of a part thereof, property alienated or partitioned becomes enclosed, passage shall be furnished gratuitously by the owner of the land on which the passage was previously exercised, even if it is not the shortest route to the public road or utility, and even if the act of alienation or partition does not mention a servitude of passage.
(emphasis added). The Civil Code provides these predial servitudes to ensure that enclosed estates remain in commerce because, without access to a public road, the potential uses for land become extremely limited and prospective purchasers are less likely to buy the property. See Phipps, 09-2037, p. 7, 45 So.3d at 598 (citing Vermilion Parish Sch. Bd. v. Broussard, 263 La. 1104, 270 So.2d 523, 525 (La.1972)).
 In this case, we mean that an estate is or becomes enclosed when the estate has no direct vehicular access to a public road.[6] See A.N. Yiannopoulos, Louisiana Civil Law Treatise, Predial Servitudes § 5:5 (4th ed.2014) (“[A]n estate is enclosed if it has no access to a public road.”);[7] Phipps, 09-2037, p. 7, 45 So.3d at 598 (noting that a road is designated as “public” if it is open to vehicular traffic for members of the general public and maintained by the public); Rockholt v. Keaty, 256 La. 629, 237 So.2d 663, 668 (La.1970). Thus, if an estate does have vehicular access to a public road, .it is not enclosed. See § 5:5 (noting that such road must be “an all-weather passageway suitable for vehicular traffic”). And, if there already exists a servitude of vehicular passage by informal destination under Article 741, Lithen the dominant estate is not enclosed. Cf. § 5:6 (stating that an estate is not enclosed when the demand for access to a *225 public road appears to be rooted in convenience rather than necessity and that access to another, less convenient road or even precarious passage by the sufferance of neighbors precludes a finding that an estate is enclosed). See also Bernard, v. Somme, 501 So.2d 893 (La.App. 5th Cir.1987).
Clearly, then, under the express terms of Article 694, if the property is not enclosed as a result of its alienation or partition, its owner is not entitled to demand the fixing of a gratuitous servitude of passage. Here, the trial court on remand did not decide whether an apparent servitude of vehicular passage was established by destination under Article 741. The trial court incorrectly reasoned that by fixing a servitude of passage under Article 694, it had rendered “moot” Mr. Phipps’ claim for recognition of a servitude under Article 741. Because an essential element of the right under Article 694 is the enclosure of the supposed dominant estate, the trial judge should first have decided Mr. Phipps’ claim under Article 741. If an apparent servitude of vehicular passage under Article 741 exists, then the supposed dominant estate is not enclosed, and no relief can be afforded under Article 694. See Phipps, 09-2037, p. 11, 45 So.3d at 600. And, for the reasons more fully explained in Part III, post, we are not able to decide that issue in the present procedural posture of this case.
Thus, Mr. Phipps failed to prove that there was no genuine issue of material fact as to whether Lot F-l (541) was “enclosed” and that alone would have precluded summary judgment under Article 694. Consequently, there remains a genuine issue of material fact as to whether Lot F-l (541) “became enclosed” at the time of the subdivision of former Lot F, and the summary judgment fixing anj^Article 694 servitude is incorrect as a matter of law. But because it appears, however, that Article 694 might otherwise apply directly to the facts of this case, we point out another deficiency in grounding the summary judgment on Article 694. We address this deficiency in the following section and assume for the sake of discussion that the subdivision of Lot F by Mr. Katz and subsequent sale to Mr. Botnick resulted in enclosure of Mr. Phipps’ estate.
B
The other basis which precludes the fixing of a servitude under Article 694 in this case — even on remand — stems from the application of the Public Records Doctrine. Assuming it was determined on remand that no servitude of vehicular passage was created under Article 741, such that Lot F-l (541) became enclosed as a result of the subdivision of former Lot F, the trial court could then fix a servitude under Article 694. An Article 694 servitude, unlike an Article 741 servitude, requires fixing either by agreement of the owners of the dominant and servient estates or by a court. The fixing of the servitude, however, must be in writing and recorded in the public records in order to be effective against innocent third-party purchasers who subsequently acquire the property from the owner of the servient estate.
Article 694 affords the acquirer of lands that become enclosed as a result of a partition or a voluntary alienation only a right to gratuitous creation of a conventional servitude of passage. See § 5:22. “Article 694 imposes a legal obligation on coparce-nors, vendors, or other transferors of lands to provide a gratuitous passage to coparce-nors and transferees for access to a public road.” § |¾¾5:21. “[A] right of way created in favor of lands alienated or partitioned ... by a judgment under Article 694 ... is a conventional servitude.” § 5:21. See also Brian v. Bowlus, 399 So.2d 545, 548 (La. *226 1981) (on rehearing). Thus, “[t]he demand of a right of passage under Article 694 ... is the enforcement of a legal obligation for the creation of a conventional servitude of passage-”§ 5:21.
Mr. Katz, the owner of Lot F, subdivided his property into Lot F-l (541) and Lot F-2 (543). Mr. Katz then sold Lot F-l (541) to Mr. Botnick in 1978. Lot F-l (541), lacking any access to a public road (as per our assumption), became enclosed when sold. As the vendor of an estate that became enclosed as the result of a sale, Mr. Katz bore a legal obligation to provide for access to a public road through his estate. As the vendee of an estate that became enclosed as the result of the sale, Mr. Botnick possessed the right to demand that a conventional servitude of passage be created under Article 694. Mr. Botnick never exercised that right, however. In 1982, Mr. Botnick then sold the property to the Phipps, who thereafter also could have exercised that right against Mr. Katz. See § 5:24 (“The right to demand gratuitous passage, under Article 694 ... may be asserted by universal successors or particular successors of the acquirer of an estate that became enclosed as a result of partition or alienation of lands.”). More importantly, Mr. Phipps never exercised this right against Mr. Katz during the year in which their respective ownerships of Lots F-l (541) and F-2 (543) overlapped.
Mr. Katz subsequently sold Lot F-2 (543) to a third-party purchaser in 1983. No agreement or juridical act noting the existence or the fixing of an Article 694 | ^servitude was in writing. See La. Civil Code art. 1839 (“A transfer of immovable property must be made by authentic act or by act under private signature.”). And, more importantly, even if a writing existed, nothing was recorded. See ibid. (“An instrument involving immovable property shall have effect against third persons only from the time it is filed for registry in the parish where the property is located.”).
Thus, when the Schupps purchased this property, nothing in the public records for Lot F-2 (543) placed them on notice either that Lot F-2 (543) was burdened with a right of servitude under Article 694 or that a servitude under Article 694 had been fixed by agreement of either the owners of the dominant and servient estates or by judicial act. Consequently, at the moment that the-sale by Mr. Katz to his vendee was finalized, Mr. Phipps’ right to demand gratuitous passage under Article 694 against Mr. Katz’s vendees or their successors was lost.[8]
The Supreme Court, in Dallas v. Farrington, applied the tenets of the Public Records Doctrine to the right to demand the recognition and enforcement of an un-recordéd conventional servitude. See 490 So.2d 265, 269-70 (La.1986). In that case, Oren Dallas signed an agreement to purchase two lots of a proposed subdivision owned at the time by Robert Farrington. See id. at 267. The agreement between the parties stated: “A further condition is the granting by seller without any restrictions or reservations whatsoever of a perpetual servitude to the buyer of the right to use [a proposed, unfinished road] as a means of ingress and egress to | ¡.¿the property herein being purchased.” Id. The lots would be “enclosed” if their access to the public road along this servitude were ever obstructed. See id. at 270. Two months later, the parties executed an act of sale for the two lots, but no mention of the servitude which would have been owed to an enclosed estate was contained in the act of sale. See id. at 267.
*227 The very next day Mr. Farrington sold land which bordered Mr. Dallas’ promised servitude to the public highway to James Fish. See id. Mr. Dallas’ promised servitude ran along the western border of the property, but the Farrington-to-Fish act of sale did not indicate that a servitude or road existed stretching over the recently-sold land to connect Mr. Dallas’ property with the public highway. See id.
Mr. Farrington, years thereafter, resub-divided nearby land, including part of Mr. Dallas’ property and the land over which the road is built, and rezoned the land for commercial use. See id. at 268. Mr. Far-rington then sold that property to his son. See id. Mr. Farrington’s son proceeded to construct a fence along the border - of the property, obstructing Mr. Dallas’ access to the road and thus his property from the highway, and sent, a letter to Mr. Dallas advising him to cease use of that property for access. See id. at 269. Mr. Dallas thereafter filed suit seeking a declaratory judgment recognizing his servitude of passage and an injunction restraining the obstruction of the servitude. See id.
The Supreme Court held that no conventional servitude was ever established. See id. The Supreme Court found that Mr. Farrington, who had caused l^the enclosure of Mr. Dallas’ property by his resub-division, obligated himself in the agreement-to-purchase to grant Mr. Dallas a servitude to use the road for passage to his property. See id. That servitude was omitted from the act of sale, transferring the property, however. See id. The Supreme Court then applied the Public Records Doctrine and held that Mr. Dallas, despite being the purchaser .of an estate eventually. enclosed by his vendor,' was precluded from asserting a claim for specific performance and for the creation of a conventional servitude of passage, pursuant to his agreement to purchase' with Mr. Farrington. See id. at 270. The Supreme Court further found that, once Mr. Far-rington sold the property, Mr. Dallas was precluded by the Public Records Doctrine from asserting against the vendee, Mr. Farrington’s son, the right to demand recognition and enforcement of a conventional servitude when the public records did not contain evidence that Mr. Farrington’s son acquired an estate bound to provide such passage. See id. at 270-71. See also § 5:24.
The Public Records Doctrine requires that an instrument that establishes a real right in or over an immovable, in order to be effective against third parties, be “registered by recording it in the appropriate mortgage or conveyance records.” La. Civil Code art. 3338. “Simply put, an instrument in writing affecting immovable property which is not recorded is null and void except between the parties.” Cimarex Energy Co. v. Mauboules, 09-1170, p. 18 (La.4/9/10), 40 So.3d 931, 943. See also McDuffie v. Walker, 125 La. 152, 51 So. 100 (La.1909). “The [P]ublic [Records [D]octrine has been described as a negative doctrine because it does not create rights, but, rather, denies the effect of certain rights unless they are recorded.” Cimarex, 09-1170, pp. 19-20, 40 So.3d at 944. (citations omitted). “[T]hird persons are not allowed to rely on what is contained in the public records, but can rely on the absence from the public records of those interests that are required to be recorded.” Id., 09-1170, p. 20, 40 So.3d at 944.
Thus, when Mr. Katz sold Lot F-2 (543) in 1982 to a third-party purchaser, Mr. Phipps’ unexercised gratuitous right to demand creation of a conventional servitude was lost. The record establishes that this right under Article 694 was not recorded in the conveyance or mortgage records. Thus, Mr. Phipps could not exercise *228 this right to demand creation of a conventional servitude of passage against any subsequent purchaser of Lot F-2 (543), including the Schupps, who were not parties to the original sale of Lot F-l (541).
Mr. and Mrs. Phipps’ passage through their neighbor’s property from 1982 (post-Katz sale) until 2006 was not the exercise of a right to a servitude of passage under Article 694, and, to the extent that no apparent servitude of passage by destination of the owner existed, their passage might well have qualified as “precarious” in nature.
The trial judge, in deciding that the fixing of a servitude was due under Article 694, erroneously relied upon Patin, 291 So.2d at 879. In that case, there were three contiguous camps that were once owned by a single owner, who then sold the property as three separate lots and no longer owned any relevant portion of the land. See id. at 880. The dispute arose over the use of a dirt pathway that | ^connected to a public road and stretched along the border of the three properties. See id. One camp, owned by Mr. Savoie, bordered the public road and one of the other two interior estates, owned by Mr. Richard. See id. The remaining interior estate, owned by Mr. Patin, bordered the estate owned by Mr. Richard. See id. Down one side of the three properties ran a dirt path that the two interior estates used to access their lands. See id. Eventually and not surprisingly, a dispute arose between property owners. See id. Mr. Richard’s interior estate built a fence separating itself from the interior estate furthest from the road, thus obstructing Mr. Patin’s access to his property from the public road. See id. The majority of a split panel of the Third Circuit found Mr. Patin’s estate then became enclosed and was entitled to a gratuitous servitude of passage under the predecessor of Article 694 — Article 701 — and recognized Mr. Pa-tin’s possession of that conventional servitude of passage. See id. at 884.
Reliance on this nonbinding precedent was misplaced, however, because its legal reasoning is erroneous and out-of-date. See id. at 885-87 (Domengeaux, J., dissenting) (insisting that the case should have been decided under the predecessor articles to Article 689 — Articles 699 and 700). Patin was decided by the Third Circuit in 1974 — twelve years before the Supreme Court’s holding in Dallas, 490 So.2d at 265, (which the trial judge in this case did not consider) and three years before the revision of the statutory scheme governing predial servitudes in 1977. See Acts 1977, No. 514 (eff. date January 1, 1978). The majority in Patin did not consider the application of the Public Records Doctrine in making their ruling. TheJ^property in Patin was owned by a single owner that subdivided the property into three contiguous lots, which were then sold to three different individuals. As the servitude of passage was not recorded, Dallas would hold that Mr. Patin should have been precluded by the Public Records Doctrine from asserting against Mr. Richard and Mr. Savoie the right to demand the creation of a conventional servitude under Article 694.
C
The trial judge committed legal error by granting summary judgment in favor of Mr. Phipps, finding him to be entitled as a matter of law to a gratuitous servitude of vehicular passage under Article 694. There exists a genuine issue of material fact whether Lot F became enclosed as a result of the subdivision. Even if it were found to have been enclosed, Mr. Phipps was precluded from asserting this right to a gratuitous servitude of passage under Article 694 after Mr. Katz, the original *229 vendor, sold his property to a third-party purchaser and nothing regarding the servitude was recorded in the public records. Thus, the summary judgment granted cannot be supported by any application of Article 694 to the facts of this case, and, importantly, that aspect of the judgment which would require the remediation of the fence and modification or removal of the building obstruction at the expense of the Schupps as part of their obligation to furnish the servitude of passage gratuitously cannot be maintained.
Ill
| snIn this Part, having decided that Mr. Phipps cannot exercise any right against the Schupps for a servitude of passage under Article 694 (which claim may have been viable against Mr. Katz), we next explain why we find that there are genuine issues of material fact which preclude a summary judgment recognizing that a servitude of vehicular passage under Article 741 was created by destination of the owner, Mr. Katz. We note here that the right to demand recognition of ownership of a servitude by destination under Article 741, a real right burdening immovable property through a petitory action is different from the right to de'mand a fixing of a servitude under Articles 694 or 689.[9]
The trial judge declared this alternative demand of Mr. Phipps to be moot in light of his favorable ruling under Article 694. Because we have rejected the availability of any servitude of passage under Article 694 under the facts of this case, we now inquire into whether the undisputed material facts could nevertheless support a summary judgment in favor of Mr. Phipps on his amended petitory action.[10] Finding on our de novo review that there remain genuine issues of material fact which preclude a summary judgment based upon Article 741, we reverse the summary judgment and remand for a trial on the merits.
A
J^We, like the trial judge, have the benefit of the Supreme Court’s earlier specific analysis as to whether summary judgment procedure with respect to relief under Article 741 is appropriate in this matter. See Phipps, 09-2037, pp. 7-14, 45 So.3d at 598-602.
Summary judgment procedure is not disfavored in Louisiana and is “designed to secure the just, speedy, and inexpensive determination” of actions. See La. C.C.P. art. 966 A(2). “A motion for summary judgment shall be granted ‘if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and thát mover, is entitled to judgment as a matter of law.’ ” Phipps, 09-2037, p. 5, 45 So.3d at 597 (quoting La. C.C.P. art. 966 B). “Appellate courts review summary judgment de novo, using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate, and in the light most favorable to the non-movant.” Id.
*230 “The initial burden of proof remains with the mover to show that no genuine issue of material fact exists.” Id. (citing La. C.C.P. art. 966 C(2)). “If the mover has made a prima facie showing that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating that a material factual issue remains.” Id., 09-2037, pp. 5-6, 45 So.3d at 597. “The failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion.” Id., 09-2037, p. 6, 45 So.3d at 597 (citing La. C.C.P. art. 966 C(2)).
^“Summary judgment usually is not appropriate for claims based on subjective facts such as motive, intent, good faith, knowledge, and malice.” Id (citations omitted and emphasis added). The Supreme Court, however, has acknowledged “summary judgment may be granted on subjective intent issues when no issue of material fact exists concerning the pertinent intent.” Id.
We review this matter de novo and determine that there remain genuine issues of material fact which preclude a summary judgment based upon Article 741. Mr. Phipps has failed to show that no genuine issue of material fact existed as to whether he is entitled to a servitude by destination under Article 741.
B
Mr. Phipps has asserted a petitory action against the Schupps claiming ownership of an apparent servitude of vehicular passage over their immovable property, Lot F-l (541). “The owner of a thing is entitled to recover it from anyone who possesses or detains it without right and to obtain judgment recognizing his ownership and ordering delivery of the thing to him.” La. Civil Code art. 526. A “petitory action is one brought by a person who claims the ownership, but who is not in possession, of immovable property or of a real right therein ... to obtain judgment recognizing the plaintiffs ownership.” La. C.C.P. art. 3651. This claim may be raised against “(1) an adverse claimant of ownership who is in possession; (2) a person in possession who. may not be asserting any adverse claim of ownership; or (3) an adverse claimant of ownership who is out of possession.” La. C.C.P. art. 3651 cmt.(a).
laaMr. Phipps claims ownership of an apparent servitude of vehicular passage, a real right, that he asserts came into existence by informal destination under Article 741 when Lots F-l(541) and F-2 (543) were subdivided and Mr. Katz left a driveway in place. At the outset of this specific discussion, we note that enclosure of an estate is not a condition to obtaining a predial servitude by destination under Article 741. Cf Phipps, 09-2037, pp. 7-11, 45 So.3d at 598-601. See also Part II-A, ante. Thus, unlike the right to a servitude of passage under Article 694 or Article 689 (which we discuss in Part IV, post), enclosure of the would-be dominant estate is not an essential element of a claim under Article 741. See 730 Bienville Partners, 596 So.2d at 836.
Predial servitudes are either apparent or nonapparent. See La. Civil Code art. 707. Apparent servitudes are those that are perceivable by exterior signs, works, or constructions, such as a roadway. See ibid. And, the Supreme Court noted in its ruling in this matter, “it is conceivable that the paved driveway is a perceivable exteri- or sign — a 'roadway' — contemplated by [Article] 707.” Phipps, 09-2037, pp. 10-11, 45 So.3d at 600. “After all, [the Supreme Court observed] the driveway visibly extends from Mr. Phipps’ garage through the [Schupps]’ property to the nearest public road.” Id. Nonapparent servitudes, by contrast, are those servitudes that have *231 no exterior sign of their existence. See La. Civil Code art. 707.
“Apparent servitudes may be acquired by title, by destination of the owner, or by acquisitive prescription.” La. Civil Code art. 740 (emphasis added). I^Nonapparent servitudes, however, may be acquired by title only. See La. Civil Code art. 739. Thus, “a nonapparent servitude comes into existence if the owner has previously filed for registry in the conveyance records of the parish in which the immovable is located a formal declaration establishing the destination.” La. Civil Code art. 741.
Mr. Phipps seeks judicial recognition of an apparent servitude acquired not by title or acquisitive prescription but solely by destination of the owner. Such an apparent servitude is thus distinguishable from servitudes under Articles 689 and 694 in that it does not depend upon a further “fixing” of a conventional servitude by juridical act or other written instrument; we address this point at Part II-B, ante, and Part IV-A, post.
A servitude by “[d]estination of the owner is a relationship established between two estates owned by the same owner that would be a predial servitude if the estates belonged to different owners.” La. Civil Code art. 741 (emphasis added). Thus, “[w]hen the two estates cease to belong to the same owner, unless there is express provision to the contrary, an apparent servitude comes into existence of right.” Ibid. Cf. La. Civil Code art. 771; § 8:12 (noting that renunciations of predial servitudes “may be made only by an express written declaration in a unilateral juridical act or in a contract ...”); Aubry et Rau, Cours de droit civil francais, § 3:252 (5th ed.1900-2) (“The party which invokes a [servitude by destination] is required to produce the act by which the two estates were separated ... in order to make possible verification that the act contains no stipulation contrary to upholding the servitude.”).[11] It is undisputed that Mr. Katz did not expressly include a contrary provision. Thus, because Mr. Katz did not “disavow the existence of a predial servitude when both estates céase[d] to belong to him,” an apparent servitude of passage may have come into existence under Article 741 “as of right.” Phipps, 09-2037, p. 12, 45 So.3d at 601. Genuine issues of material fact exist as to whether this servitude was apparent in nature, however, which precludes summary judgment under Article 741.
The Supreme Court also found that genuine issues of material fact remained as to “whether the driveway’s location suggests it was intended to serve the enclosed estate as a right of passage to the nearest road.” Id., 09-2037, p. 11, 45 So.3d at 600 (emphasis added). Thus genuine issues of material fact also exist as to the servitude’s extent and manner of use. As previously stated, servitudes by destination come into existence as of right or by operation of law and thus do not require recordation in the public records of the immovable to exist. Thus, the immovable’s title is silent as to the -servitude’s extent and manner of use. “If the title is silent as to the extent and manner of use of the servitude, the intention of the parties is to be determined in the light of its *232 purpose.” La. Civil Code art. 749.[12] |3r,The extent and manner of use of this servitude thus should be determined by considering the totality of the evidence, including the testimony of the common owner, Mr. Katz, and the testimony of Mr. Botnick, Mr. Phipps’ ancestor in title. While Mr. Katz’s testimony is highly relevant to the matter of extent and manner of use, its content is not binding upon the fact-fínder. The fact-finder should also consider all other available evidence to make this determination.
Here, after the remand by the Supreme Court, Mr. Katz (the common owner) and Mr. Botnick (Mr. Phipps’ vendor) both signed affidavits and were deposed. Mr. Katz’s testimony on the issue of his intent is equivocal at best. He testified that he purchased Lot F with the intent of living on the property. Mr. Katz testified about a survey of the property that he commissioned prior to his purchase of the land which noted that no driveway existed. Mr. Katz testified that his driveway consisted of a pad of cement that extended over his public sidewalk and onto the street and that he was not certain whether the cement driveway extended from the rear of the carport onto Mr. Botnick’s property. Mr. Katz testified that, following his purchase of Lot F, he engaged an architect to draft some plans for the property. That document, which was revised after discussions with Mr. Katz, included a cedar fence along the back of the carport that lacked a gate through which to |S7permit vehicular traffic. Mr. Katz testified that the carport also had a gate with a key lock on its entrance by the sidewalk.
Mr. Katz further testified that when he lived at Lot F-2 (543) he parked on Patton Street, only leaving his own vehicle inside of the narrow carport when he went out of town and that he did not use the shell road bordering Exposition Boulevard in Audubon Park. Mr. Katz testified that he subdivided the property in an effort to reduce his capital investment and sold the land to his friend, Mr. Botnick. Mr. Katz testified that Mr. Botnick also parked his car on Patton Street and only accessed Lot F-l (541) through the driveway of Lot F-2 (543) when he needed to bring ice chests into his home after returning from fishing and when repairmen were carrying ladders.
Mr. Katz also testified that he signed his affidavit, which was drafted by Mr. Phipps, without making any substantive changes. Counsel for the Schupps discussed the affidavit in detail. Mr. Katz admitted to numerous inconsistencies between his testimony at deposition and the contents of that affidavit. Mr. Katz admitted that he could not remember whether the concrete driveway extended from the carport to Mr. Phipps’ property as he averred in the affidavit. Mr. Katz also confessed that he was not familiar with the rules and regulations with which he needed to comply *233 when he subdivided Lot F, as he also averred in the affidavit. This includes the specific subdivision regulation requiring that each property have frontage on a public street.
IssFinally, when asked directly if he ever intended for the owners of Lot F-l (541) to have a servitude over the owners of Lot F-2 (543), Mr. Katz, a law school graduate, stated that he never “really thought of it like that.... Mr. Botnick was a very close friend of mine, and if he wanted to utilize that space, he could choose to utilize it.” Mr. Katz stated that Mr. Botnick’s right to access his property through Lot F-2 (543) was limited to “within reason.” When asked to elaborate on the reasonableness of Mr. Botnick driving a car over his property, Mr. Katz replied, “Well, it depends with what frequency and for what purpose. If he ... needed to back up his car because he had a 300-pound — he had a great day out and he just killed them and had some speckled trout that I’d like to have some of and he wanted to back his car, he could back his car right up there.” When asked whether Mr. Botnick could use the carport as a driveway and access his property at any time of night or day, Mr. Katz replied, “I think we would have had to talk about that. I’m not sure if that would have been reasonable.” Mr. Katz stated though that he could not recall Mr. Bot-nick ever driving his car through the carport to his property. Finally, Mr. Katz reiterated that he never gave “specific thought to a servitude.”
Mr. Botnick’s testimony also does little to clarify the matter. Mr. Botnick testified that he purchased Lot F-l (541) from Mr. Katz with the intention of residing on the property. Mr. Botnick stated that he remembered a concrete driveway that ran from Patton Street to Lot F-l (541) through a carport on Lot F-2 |sn(543) but could not recall in what condition the driveway was or whether a car could fit into the rear portion of the home on Lot F-l (541).
Mr. Botnick testified that Mr. Katz granted to him personal, unfettered pedestrian access to his property via the carport on Lot F-2 (543). Mr. Botnick stated that he received a key to the gate to the carport facing Patton Street from Mr. Katz. Mr. Botnick further testified that he never drove his car through Mr. Katz’s carport because the vehicle was too large, that he never contemplated using the carport for habitual vehicular access, and that it would not have been feasible for both properties to use the shared driveway. Mr. Botnick testified that he parked on Patton Street and only he and repairmen would access the property through the driveway, that he and Mr. Katz chose not to reduce the contents of their agreement on passage to writing, and that he never considered the need for a recorded servitude.
Considering this testimonial evidence in conjunction with the other evidence contained in the record on appeal, Mr. Phipps has failed at this stage to sufficiently prove by undisputed material facts the existence of the claimed servitude by informal destination and the proper extent and manner of use of that servitude. Summary judgment is therefore inappropriate. Thus, we cannot find an alternative basis to uphold the granting of summary judgment in this matter. And consequently the summary judgment in favor of Mr. Phipps is necessarily reversed. Remand, however, is appropriate in order to permit a trial on the merits. On remand, the fact-finder must find whether an apparent servitude by des-tinationJjjcame into existence as of right when Mr. Katz subdivided Lot F in 1978 by determining whether this servitude was sufficiently perceivable by external signs. Should the fact-finder find that a servitude by destination was created, the fact-finder *234 should then determine the extent and manner of use of that servitude to determine whether this servitude was vehicular in nature or not.
If on remand the fact-finder determines that a servitude of vehicular passage was created under Article 741 burdening Lot F-2 (543) such that Mr. Phipps is entitled to mandatory injunctive relief requiring the removal of the fence and the renovated carport which obstructs the passage, then the cost of that removal must be assessed. The costs should be borne by the person that created each obstruction. See Aubry et Rau, Cours de droit civil frangais, § 3:254 (5th ed.1900-2) (“If the servient estate had passed into the hands of a particular successor, the latter would be obligated to endure the reestablishment of the former state of affairs; but he could not be condemned to have it done at his own expense, and would not be liable for any damages. It falls upon the owner of the dominant estate to recover his costs and damages from the author of the works which constitute the obstacle to the exercise of the servitude.”).[13] According to the evidence submitted to date, Dr. Gonzalez, the vendor of the Schupps, renovated the carport and the Schupps built the fence. Dr. Gonzalez, however, is not currently a party to this action. The |41 Schupps, who are parties, did not initially obstruct the passageway, had no knowledge of the existence of a servitude of passage at the time of their acquisition of Lot F-2 (543) and thus cannot be made to bear the cost and expense of the removal of the enclosed carport.[14]
C
We do not suggest, however, that on remand the parties are precluded from examining more closely the problematic issue of whether, assuming that an apparent servitude of vehicular passage came into existence by the destination of Mr. Katz, such servitude was still preserved as of the date of the acquisition of Lot F-2 (543) by the Schupps. We have not decided, as the parties have not briefed, the seemingly unprecedented (and perhaps unprovided for) situation presented in this case whether an apparent servitude once established by destination and thus not governed by the requirements of title might nonetheless be subject to the Public Records Doctrine if it is no longer visible to a purchaser of the servient estate.
Article 741 constitutes a significant change from the pre-1977 law. “Under the 1870 Code, it is [only] continuous and apparent servitudes that may be acquired by title, by destination of the owner, or by acquisitive prescription.” La. Civil Code art. 740 cmt.(a). This “distinction of servi-tudes into continuous and discontinuous has been suppressed ...,” however. La. Civil Code art. 706 cmt.(c). This change in the law resulted in an expansion of the kinds of servitudes that could be acquired by destination of the owner to include the servitude at issue in this matter, which would previously have been classified as *235 apparent andj^discontinuous.' A servitude of passage, such as a road, drive or path, was apparent but discontinuous and as such, under prior law, could not be acquired by destination of the owner. See Mallet v. Thibault, 212 La. 79, 31 So.2d 601 (La.1947); Kelly v. Pippitone, 12 La.App. 685, 126 So. 79 (La.Ct.App.Orl.1930); Marcel v. Stringer, 118 So.2d 694 (La.Ct.App.Orl.1960) (examining servitudes through the apparent and discontinuous standard prior to the revision set forth in the 1977 Civil Code).
In the Exposé des Motifs for the 1977 comprehensive codal revision on predial servitudes, it was observed that the division of apparent servitudes into continuous and discontinuous “should be immaterial for the determination of modes of acquisition of predial servitudes.” Exposé des Motifs, West’s LSA Civil Code, Volume 3A, p. 20 (2008 ed.) (emphasis added). It is therein explained that “[t]he policy served by this division relates to requirements of notice and adversity of use.” Id. (emphasis in original). “According to modern civilian doctrine and prevailing conceptions in society, however, the requirement of visibility of the servitude should suffice.” Id. (emphasis in original). Thus, regardless of whether the apparent servitude is continuous or discontinuous, “the rights of landowners are not compromised” because “[t]he erection of visible works is onerous for the owner of the dominant estate and affords ample notice to adverse claims to the owner of the servient estate.” Id.
Yet, critically, its understandable and logical exemption or exclusion from the Public Records Doctrine is grounded in the quality essential to its coming into existence: that its existence on the ser-vient estate, along with its relationship to the dominant estate, is perceivable, observable or visible “by exterior signs, works, or | ^constructions”[15] like a roadway or, here arguably, a driveway accompanied by a gate and key for access. Here, however, there is considerable evidence that suggests an apparent servitude of vehicular passage (assuming its existence) was no longer visible and, without any question, that no vehicular passage was in use at the time of the Schupps’ acquisition. And, in this regard, we note that Professor Yiannopoulos seems to suggest that even-though there is no requirement for registration in the public records for a servitude established by information destination of the owner, there may nevertheless be a requirement to file for registry an act in the public records “in order to be effective toward third persons.” § 6:40.
The dominant estate must benefit from the servitude. See La. Civil Code art. 647. And the benefit of a built-over driveway on Lot F-2 (543) to the dominant estate, Lot F-l (541), may well be found by a fact-finder to not be apparent or visible to an innocent third-party purchaser.
IV
In this Part we address in detail the alternative possibility, as pointed to by the Supreme Court in its decision, that if a servitude of vehicular passage was not created by destination under Article 741, then Mr. Phipps might be entitled to the fixing of a servitude under Article 689 because his estate is enclosed.[16] See Phipps, 09-2037, pp. 6-7, 45 So.3d at 598. In addressing this alternative, we reject the Schupps’ *236 contentions that Mr. Phipps’ property is not enclosed either because of a |441928 Municipal Ordinance respecting access to Exposition Boulevard or because Mrs. Phipps, a co-owner in indivisión with Mr. Phipps, having confessed under oath that she acquiesced to the construction made by the Sehupps’ vendor, self-enclosed their estate.
A
If the fact-finder finds that Mr. Katz did not intend to create a servitude of vehicular passage by destination under Article 741, Mr. Phipps’ estate would then have “no access to a public road” and could properly be considered “enclosed.” Phipps, 09-2037, p. 7, 45 So.3d at 598. Mr. Phipps, as the owner of enclosed estate, would then be able to “claim a right of passage over neighboring property to the nearest public road....”[17] La. Civil Code art. 689.
Forced passage in favor of an enclosed estate is a “legal servitude for the utility of individuals.” § 5:3. This “legal servitude of passage is predicated on ‘necessity,’” requiring that an estate have no access to a public road or that its access be insufficient for its use.[18] § 5:6. “[W]hile the right of forced passage ‘has been generally accepted as designed to benefit the landowner so he could produce profit for himself and obtain full utility of his land, it must now be deemed also to offer protection of public interest.’ ” § 5:3 (citing Rockholt, 237 So.2d at 668). “ ‘As land becomes less available, more necessary for public habitation, use and support, it should run contrary to public policy to encourage land locking of such a valuable asset and forever removing it from commerce and from public as well as private benefit.’ ” § 5:3 (citing Rockholt, 237 So.2d at 668). See also Littlejohn v. Cox, 15 La.Ann. 67, 67 (La.1860).
“The burden of the forced passage is the legal servitude, and the fixing of the passageway creates a conventional servitude of right of way.” A.N. Yiannopoulos, The Legal Servitude of Passage, 71 Tul. L.Rev. 1, 5 (1996). Article 689 “does not by itself establish a right of way, nor does it confer on the owner of the enclosed estate authority to use a particular part of the neighboring lands as a passageway to a public road.” § 5:13. The servitude of “passage must be fixed, that is, the location, length, and width, of the right of way on the servient estate must be designated by agreement of the parties or judicial decision.” § 5:3. “The right of passage for the benefit of an enclosed estate shall be suitable for the kind of traffic ... that is reasonably necessary for the use of that estate.” La. Civil Code art. 690. This can include vehicular passage sufficient to permit Mr. Phipps’ residential use of his enclosed estate. See § 5:4.
This legal servitude “burdens the estate or estates that surround the enclosed estate. The law makes no distinction; consequently, the servitude may burden all sorts of immovables, urban or rural, improved or unimproved, whether surround *237 ed by enclosures or not.” § 5:11. An Article 689 servitude “may also burden estates that are inalienable, and even property of the public domain of the state or its ^political subdivisions, provided that the servitude is not incompatible with the destination of such property.” Ibid. And here importantly, “[t]he servitude of passage may thus burden parks, yards, and gardens.” Ibid. Thus, if the fact-finder found that Mr. Phipps was entitled to a right of passage under Article 689, the passage need not necessarily be fixed through the Schupps’ property but instead, depending on factual assessment of the situation, possibly fixed through Audubon Park or some other neighbor’s property.[19]
“The owner of the enclosed estate may not demand the right of passage ... anywhere he chooses. The passage generally shall be taken along the shortest route from the enclosed estate to the public road ... at the location least injurious to the intervening lands.” La. Civil Code art. 692. In fixing this passage, “[cjourts are not bound to follow the shortest route, but departure from this standard must be supported by weighty considerations.” § 5:14. “The court shall evaluate and determine that the location of the servitude of passage ... shall not affect the safety of the operations or significantly interfere with the operations of the owner of the servient estate or intervening lands prior to the granting of the servitude of passage.... ” La. Civil Code art. 692.
“The owner of the enclosed estate may construct on the right-of-way the type of road ... reasonably necessary for the exercise of the servitude.” La. Civil Code art. 691. The owner of the enclosed estate “is bound to compensate his |47neighbor for the right of passage acquired and to indemnify his neighbor for the damage he may occasion.” La. Civil Code art. 689.
B
The Schupps also put forth two arguments that would, if meritorious, render Mr. Phipps’ property not enclosed and thus extinguish his claim for forced passage under Article 689. First, the Schupps claim that a 1928 Municipal Ordinance applies to Lot F-l (541). The ordinance provides access via a gravel road to residents with property on Exposition Boulevard fronting the park. Second, the Schupps argue that Mrs. Phipps, a co-owner in indivisión with Mr. Phipps, self-enclosed their estate by acquiescing to the renovation made by the Schupps’ vendor. The Schupps rely on Mrs. Phipps’ confession under oath to substantiate this claim. We reject both arguments.
1
Municipal Ordinance 10,358, adopted February 27, 1928 by the City of New Orleans,[20] is not applicable to Lot F-l (541). The ordinance is limited in its application to “granting to the property owners along that section of Audubon Park known as Exposition Boulevard [from Magazine Street to South Front Street] thirty feet next to same as a .means of ingress and egress used for the past twenty years.” See Bourg, 89 So.2d at 678. The Orleans Court of Appeal interpreted this Municipal Ordinance “[b]y its title and its intent” to be “limited to those people who, for the past twenty years (prior to 1928) had used the Park as a means of *238 14Singress and egress.” Id., 89 So.2d at 679. The Court of Appeal continued: “Briefly, the Ordinance is limited, in its application, to a particular condition which arose in a restricted area at a specific time.” Id.
Here, Lot F enjoyed access to Patton Street until its subdivision in 1978-a full fifty years after this municipal ordinance was passed. Lot F-l was not yet in existence at .the time of the passing of the Ordinance. The plain language of the Ordinance shows that it is not applicable in this case and plays no role in rendering the Phipps’ property not enclosed.
2
Mrs. Phipps’ acquiescence and consent to the renovation, which resulted in the driveway being obstructed by the Sehupps’ vendor, does not constitute a voluntary act resulting in self-enclosure of the estate under Article 693 such that Mr. Phipps cannot assert his right to a servitude of passage under Article 689.
Article 693 provides an exception to the general principle that an enclosed estate is entitled to a forced right of passage. This exception applies when “an estate becomes enclosed as a result of a voluntary act or omission of its owner,” and, as a result, “the neighbors are not bound to furnish a passage to [the enclosed landowner] or his successors.”[21] La. Civil Code art. 693.
“Article 693 brings to the statutory scheme a certain tension, if not ambiguity. By virtue of Articles 689 and 694, an enclosed landowner is entitled to |43a right of passage irrespective of how the enclosure came to pass.... Yet, article] 693 relieves a neighbor of the obligation to furnish a right of passage if there has been a voluntary act or omission oh- the part of the landowner who is demanding the right. Therein lies the possible conflict.” LeBlanc, 615 So.2d at 298. These “provisions are regarded as founded on the presumed intent of the parties to an agreement or on the idea that a landowner should not be allowed to impose by his own volitional acts the burden of a forced passage on neighboring lands.” § 5:20.
Here, the Sehupps claim that Mrs. Phipps’ grant of permission to the Sehupps’ vendor’s renovation that resulted in the obstruction of the driveway servitude constituted self-enclosure under Article 693 and precludes Mr. Phipps’ right to raise a claim for a servitude of passage under Article 689. “Legal and natural ser-vitudes may be altered by agreement of the parties if the public interest is not affected adversely.” La. Civil Code art. 729. An alteration of a legal servitude is usually “by an express and written renunciation by the owner of the dominant estate.” La. Civil Code art. 771. An oral transfer is valid, however, between the parties “when the property has been actually delivered and the transferor recognizes the transfer when interrogated under oath.” La. Civil Code art. 1839. See also Miller v. Long Oil & Gas Exploration, Ltd., 542 So.2d 75 (La.App. 3rd Cir.1989).
Even assuming that Mrs. Phipps’ consent to the Sehupps’ vendor’s renovation which obstructed their servitude was sufficiently confessed to meet the standards for alteration of a servitude under Article 1839, her consent alone would | snnot constitute self-enclosure and discharge the Sehupps’ servient estate. See La. Civil Code art. 772 (“A renunciation of a servitude by a co-owner of the dominant estate *239 does not discharge the servient estate, but deprives [that co-owner] of the right to use the servitude.”). Mrs. Phipps owns Lot F-l (541) in indivisión with her husband, and his consent is also required to release or alter the nature of a servitude between these estates. See La. Civil Code art. 652 cmt.(b) (“[T]he release of a servitude in favor of an estate owned in indivisión requires the consent of all the co-owners.”). No evidence has been set forth in the record to show that Mr. Phipps consented to the construction of the addition. Thus, the evidence contained in this record is insufficient to substantiate this claim.
C
Thus, if the fact-finder concludes after a trial on the merits that Mr. Phipps is not entitled to have a servitude of destination under Article 741 recognized, it does appear — as the Supreme Court has already noted — that Lot F-l (541) would be enclosed. And, if enclosed, then Mr. Phipps is entitled to have a servitude of vehicular passage fixed. Of course, under Article 689, Mr. Phipps would be required to pay the cost of creating and maintaining the passage as well as indemnify any damages sustained by the owner(s) of the servient estate(s) through which the servitude is fixed.
y
We here summarize the aspects of our holding by pointing to their practical effects on the parties. First, because we find not only that there is a genuine issue | of material fact that precludes summary judgment on Mr. Phipps’ claim for a servitude of passage under Article 694 but also that he is precluded under the Public Records Doctrine from asserting such a claim against the Schupps, we conclude that the Schupps owe no gratuitous vehicular passage to Mr. Phipps and thus cannot be compelled to remove the fence and building obstruction at their cost. Second, we conclude that genuine issues of material fact exist which preclude the granting of summary judgment on petitory action under Article 741. Even if summary judgment were appropriate, insofar as the judgment required the Schupps to bear the expense of remediating the enclosed driveway, it could not be affirmed because the Schupps did not erect that obstruction to the vehicular passage.[22] And third, if the fact-finder determines that there was •no vehicular servitude by destination and that Lot F-l (541) is enclosed such that Mr. Phipps is entitled to have a servitude of vehicular passage fixed under Article 689, it is Mr. Phipps-and not the Schupps-who must bear the expense of such a passage.
DECREE
The summary judgment granted in favor of Roger Phipps and against Cynthia Nelson Schupp and Roland Cutrer, Jr., is reversed. This matter is remanded to the trial court for a trial on the merits in accord with our opinion.
REVERSED AND REMANDED.
LOVE, J., concurs in the result.

. For convenience, we refer to the defendants-appellants, Ms. Schupp and Mr. Cutrer, Jr., as "the Schupps.” We refer to the plaintiff-appellee as "Mr. Phipps” even though the property is owned in indivisión with his wife (and counsel); Mrs. Phipps is not a party.

. This dispute about servitudes arises from the sale of a subdivided property. As the *216 subdivision occurred in 1978, this controversy is exclusively governed by the 1977 revisions tó the law of servitudes. See Acts 1977, No. 514 (eff. date January 1, 1978).

. This judgment, upon the Schupps' refusal to comply, would be enforced by a writ of dist-ringas. See La. C.C.P. arts. 2502-04.

. We pretermit discussion of this assignment of error because we reverse the motion for summary judgment granted by the trial court, set aside the resultant gratuitous servitude fixed under Article 694 and remand the matter; thus there is no fixed servitude to be relocated.

. We do not describe Mr. Phipps' right under Article 694 as extinguished because it is possible that this right could be resuscitated in the event that Mr. Katz reacquired the servient estate. See, e.g., Chevron U.S.A., Inc. v. Louisiana, 07-2469, p. 4 (La.9/8/08), 993 So.2d 187, 190 n. 4 (discussing the after-acquired title doctrine).

. We further comment and expand upon the concept of “enclavement” with regard to estates in Part-IV A, post.

. We acknowledge our heavy reliance upon the Civil Law Treatise authored by Professor Yiannopoulos and his research-based insights regarding Predial Servitudes. Due to the numerous citations to this treatise, our subsequent citations to that particular work will be limited to the relevant numerical designations of chapter and section.

. But see n. 5, ante.

. See La. Civil Code arts. 526-32; La. C.C.P. arts. 3651-63; A.N. Yiannopoulos, Louisiana Civil Law Treatise, Property § 256-79; 325-43 (4th ed.2014).

. Mr. Phipps, in his original demand, set forth a possessory action, seeking that his possession of this vehicular passage be maintained. In his opposition to the Schupps’ original motion for summary judgment, Mr. Phipps asserted that he had acquired ownership of a servitude by destination under Article 741. Thereafter, this action has been litigated as a petitory action. We therefore, treat this matter as a successfully converted petitory action and consider the possessory action abated under Article 3657 of the Code of Civil Procedure.

. In our research, we could not locate this work translated into English. Dr. Dennis Durocher, a Professor in the Department of Languages and Literature at Nicholls State University, translated the work supplied in the parenthetical. The original in French states: "La partie qui invoque [la destination du pére de famille] est tenu de produire l'acte par lequel s'est operé la séparation des deux heritages [ ... ] pour rendre possible la vérification du point de savoir si cet acte ne contient aucune stipulation contraire au maintien de la servitude.”

. Article 780 of the Louisiana Code of 1870 provided:
If the title by which a passage is granted does not designate its breadth, nor the manner in which it is to be used, whether on foot, or horseback, or with carriages, the use which the person to whom the servitude is granted previously made of it will serve to interpret title. If there was no such use made of it before, the probable intention of the parties must be considered, and the purpose for which the passage is granted. If these circumstances can afford no light, it must be decided in favor of the land which owes the servitude, and a foot passage must be conceded eight feet wide, where it is straight, and ten feet wide where it turns.
It must be remembered, of course, that under the former regime for servitudes, including former Article 780, a servitude of passage could only be acquired by title (or prescription). See discussion at Part III-C, post.

. As previously stated, this work is not available translated into English. Professor Durocher translated the following: "Que si l'héri-tage servant avait passé dans les mains d’un successeur particulier, celui-ci serait bien oblige de souffrir le rétablissement de I'ancien état de choses; mais il ne pourrait étre con-damné á le faire opérer á ses frais, et ne serait passible d'aucuns dommages-intéréts, sauf au propriétaire de l’héritage dominant á récupérer ces frais et dommages-intéréts contre l'auteur des travaux qui forment obstacle á l’exer-cice de la servitude.”

. We express no view on whether the Schupps may have a cause of action against Dr. Gonzalez either for indemnity for damages that they may sustain as a result of any removal or for a revocation of the sale. See La. Civil Code art. 2500.

. La. Civil Code art. 707.

. "[T]he action for forced passage under Article 689 ... is imprescriptible.” § 5:12.
“The imprescriptibility of the legal servitudes derives from their nature rather than an express provision of law.” Ibid.

. ' Mr. Phipps can properly bring a claim under Article 689 as a co-owner in indivisión without joining his wife and co-owner in indi-visión, Mrs. Phipps, as a plaintiff. “In an action seeking a forced passage on the land of a neighbor, plaintiff is normally the owner of the enclosed estate or his representative. However, the word owner in Article 689 ... must be given a broad interpretation to include any person who has a real right on the endosed estate." § 5:12. "When an endosed estate is held in indivisión, eadi of the co-owners may institute an action seeking a forced passage." Ibid.

. "[T]he legal servitude of passage is extinguished upon termination of the enclavement." § 5:19.-

. “In an action for a forced passage, proper party defendant is the owner of the estate that blocks plaintiff's access to a public road.... Whether a particular owner must be joined as a party depends on facts and circumstances .... This right to the public road may not be determined unless all the owners of lands that are to be traversed by the passage are made parties.” § 5:12.

. Bourg, 89 So.2d at 678.

. "An act that qualifies as 'voluntary alienation or partition’ of an estate under Article 694 ... is also a voluntary act’ under Article 693.” § 5:9. The landowner who voluntarily alienated or partitioned his estate may not claim under Article 689 a passage for indemnity over neighboring lands. Sea § 5:9.

. Our holding of course does not foreclose the possibility that Mr. Phipps though failing to establish an Article 741 servitude of vehicu-i lar passage might nonetheless establish an Article 741 servitude of pedestrian passage in' which event the Schupps might be obliged to pay for the removal of the fence by which they obstructed the pedestrian passage.